Hanscom vs. The State.

HANSCOM, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 17 — May 1, 1896.*

*Perjury: Materiality of false statements: Evidence: Waiver of objection: Hearsay: Instructions to jury: Pleading: Election.*

1. It being material on a murder trial whether or not P., one of the defendants, left the city on the night of the murder soon after the firing of shots, wilfully false testimony of a witness in denial of a statement, previously made by him to the prosecuting attorney, to the effect that he was in the city that night and heard shots fired and shortly afterwards drove out of town with said P. in a buggy, was perjury; and so also was his circumstantial account of what he was doing in another place during the time in question, given falsely on his cross-examination to lend a greater air of truth and probability to such denial.

2. The admission of testimony cannot be alleged as error by the defense where it was elicited by them on cross-examination of a witness for the state and they did not move to strike it out.

3. On the trial of one H. for perjury alleged to have been committed in a murder case, the prosecuting attorney was a witness for the state, and the defense elicited from him, on cross-examination, testimony to the effect that he had heard a rumor of possible tampering with H., as a witness in the murder case, by S., one of the attorneys for the defense in that case. Afterwards the court refused to permit S. to testify that he had never said anything to H. about his receiving money for testifying or not testifying in the murder case, stating in effect that there was absolutely no proof of any such thing in the case. *Held*, that such exclusion of the testimony of S. was not error; nor was it error, in view of the

statement then made, to neglect to say to the jury in the general charge that there was no evidence tending to show any corrupt purchase of H.'s testimony.

4. It was not error on a trial for perjury to refuse to compel the state to elect upon which separate statement or statements of the defendant it would ask for a conviction, where those statements were such that any separation of them was practicably impossible, and they were either all true or all wilfully false.

ERROR to review a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This was a prosecution for perjury. It appeared on the trial that on the night of October 7, 1882, Henry C. Mead, a banker of Waupaca, Wisconsin, was murdered by shooting, in his bank building at Waupaca, by some unknown persons. In 1892 an indictment was found against Samuel Stout, Edwin C. Bronson, and Charles A. Pryor for such murder; and they were tried at Waupaca in the months of June and July, 1893, and acquitted. The plaintiff in error was a witness upon the trial. At the time of the murder, plaintiff in error lived in the village of Iola, thirteen miles north of Waupaca, and soon after left Iola and the state. About two months before the trial of Stout, Bronson, and Pryor, the plaintiff in error was arrested in the state of Washington, and brought back to Wisconsin, on the charge of being an accessory to the murder of Mead.

In the latter part of May, 1893, the plaintiff in error made a statement or confession to Mr. B. M. Goldberg, the district attorney of Waupaca county, substantially to the effect that on the night of the Mead murder he was in Waupaca, around town, in Bronson's store and Stout's saloon, drinking with Bronson, Stout, Pryor, and others, and that he got pretty full; that late at night Bronson said he had engaged a rig to take him (*Hanscom*) home, and that Pryor would take him; that he and Bronson sat on the south steps of the court-house a while, and Bronson finally got up and said he would go and find Pryor; that he (*Hanscom*) stayed at the

court-house; that he heard two sharp reports of a gun; that Bronson came running up, and said, "I've got your rig," and he (*Hanscom*) asked, "What was that shooting?" to which Bronson replied, "Somebody shooting a dog, I guess; come on;" that he followed Bronson through an alley into the rear end of Stout's saloon, and they drank; that, before long, Stout and Pryor came in, and Bronson asked Pryor if he had a rig, and Pryor said Sherman would be right over with it; that Pryor then handed a bag to Bronson, and said, "All right;" that, when the rig got into the alley, Pryor and *Hanscom* got in; Pryor put something into the buggy; that he (*Hanscom*) fell asleep, and Pryor woke him up in front of the Bailey House in Iola, while it was yet dark, and he got out, and Pryor drove off, saying he was going for a servant girl.

Upon the trial of the murder case, it appeared that Bronson's store and Stout's saloon were in close proximity to Mead's bank, and that the court-house was but a short distance away. The state called *Hanscom* as a witness on the murder trial, but, instead of testifying to the facts set forth in the foregoing statement, he denied that he was in Waupaca that night, and denied all the facts contained in the statement *seriatim*. He also, upon cross-examination, went on to state that he was in Iola that night, and attended a meeting of an Odd Fellows' Lodge, and that Jacob Wipf and others were there also, and stayed until about 10 o'clock; that he was in Huun's hardware store that evening before he went to the lodge; that he played cards at a candy store after the lodge, all night, with Joe Weatherby and others; that he saw Herman Hermanson in Iola that evening, and bought a beef of him; and that he saw Pryor at about daylight of the following morning, driving a team of horses north along the street through Iola, just as he (*Hanscom*) was going into the Bailey House.

The information in the present case charges perjury in

denying the various facts set forth in the statement or con-
fession above set out, and in stating on cross-examination
that he was in Iola that night and the following morning,
and the various things which he testified to having done at
Iola that night. Much testimony was introduced on behalf
of the state, both direct and circumstantial, tending to prove
that *Hanscom* was in fact in Waupaca on the night in ques-
tion, and made the midnight trip with Pryor to Iola, and
that his story of his whereabouts at various places in Iola
was entirely false. *Hanscom* was sworn as a witness in his
own behalf, and substantially affirmed the truth of the
story told by him on the trial of the murder case, and
claimed that the statement or confession given to Mr. Gold-
berg was false and made simply to fool him.

A verdict of guilty "in manner and form as charged in
the information" was rendered; and, judgment having been
rendered upon such verdict, the plaintiff in error sued out
this writ.

For the plaintiff in error there was a brief by *Cate, San-
born, Lamoreux & Park*, and oral argument by *A. W. San-
born*.

For the defendant in error there was a brief by *Benj. M.
Goldberg*, district attorney, and a separate brief by the *At-
torney General* and *John L. Erdall*, Assistant Attorney
General, and oral argument by the *Attorney General* and
*Mr. Goldberg*. To the point that the false testimony was
material, they cited *U. S. v. Landsberg*, 23 Fed. Rep. 585;
18 Am. & Eng. Ency. of Law, 311; *People v. Courtney*, 94
N. Y. 490; 3 Greenl. Ev. (15th ed.), 214; *State v. Voorhis*,
52 N. J. Law, 356; *State v. Hunt*, 137 Ind. 537; 2 Bish.
Crim. Law, §§ 1036, 1037; 2 Whart. Crim. Law, § 1277.

WINSLOW, J. The first contention made by the plaintiff
in error is that the testimony which is claimed to have been
perjured was entirely immaterial to the issue tried in the

Hanscom vs. The State.

murder action.   It is said in this connection that it was entirely immaterial in that case whether *Hanscom* was in Waupaca or in Iola on the night of the murder, or whether he was in the Odd Fellows' Lodge or the candy store, or who was with him, or what he was doing.   Strictly speaking, none of these facts by themselves alone tend directly to prove the guilt or innocence of Stout, Bronson, or Pryor, but they are not necessarily immaterial testimony on that account. The situation was this: Pryor was a night watchman in the city of Waupaca.   There was testimony tending to show that on the night of the murder, and soon after the firing of the shots, Pryor left Waupaca with a double rig and one companion, and drove north in the direction of Iola.   It is rightly said in the brief of the plaintiff in error that, "under the circumstances, it was material whether he [Pryor] had left the city soon after the murder, in the night time, and if unexplained might be strong evidence of guilt."   This being a material fact — indeed, a vital and almost a decisive fact — upon the question of the guilt of Pryor, it needs no argument to show that a wilful denial by *Hanscom* that he made that trip with Pryor (if in fact he did make it) can be nothing more nor less than an attempt, by false swearing, to exculpate a criminal and defeat the ends of justice.   This is perjury, no more and no less, and no amount of ingenious reasoning can change the legal effect of this kind of testimony.   When, therefore, the plaintiff in error denied that he was in Waupaca on the night of the murder and met the accused persons, and denied that he heard the shots and talked with the accused, and that he rode out of town at midnight with Pryor and a bag of something in the buggy, he was undoubtedly committing rank perjury if in fact he was, when making such denials, testifying wilfully and falsely, with corrupt intent to shield the defendants from the incriminating consequences of the real facts.   Had he told the truth, every word which he uttered would have

made an additional link in the chain of evidence about the accused, and a wilful denial of such facts under oath must be perjury. His denial of his presence in Waupaca, and of his meeting the defendants late at night, and of his ride to Iola at night with Pryor, being perjury (if wilfully false), the question then arises as to whether his circumstantial account of what he did that night at Iola (if false) is perjury. This testimony was given upon cross-examination, to lend a greater air of truth and probability to his story upon direct examination. If false, it was a manufactured state of facts, produced before the jury to induce them to give credit to his previous denials. Such testimony is undoubtedly perjury. "For a witness knowingly to fabricate details in order to strengthen his credibility is as much perjury as any false swearing. Hence it has been wisely held that perjury may be committed in swearing falsely to a collateral matter with intent to prop the testimony on some other point." 2 Whart. Crim. Law (10th ed.), § 1277; 2 Bish. New Crim. Law, § 1037.

The circuit judge gave the jury a very correct statement of the law on this subject, in his charge, as follows: " Primarily, as independent and substantive facts, it was not material to a judicial determination of the guilt or innocence of Stout, Bronson, and Pryor, or either of them, whether it was true or false that *Hanscom* spent the evening and night of the murder at Iola, whom he saw and conversed with there if in fact there, whether he was at the Odd Fellows' Lodge or not, whether he played cards all night at a candy store or not, whether or not he heard shots fired in Waupaca during the night. The same is true of all other merely collateral facts, if any, sworn to by the defendant on the murder trial. But — and you will see and note the distinction — if the defendant was in fact in Waupaca on the night of the murder, in fact heard shots during the night, and soon thereafter met Pryor and others in the alley mentioned,

and there, about midnight, got into a buggy with and rode with Pryor to Iola, and afterwards, on the murder trial, falsely, corruptly, and to defeat a discovery of the truth on that trial, on his oath denied all knowledge of Pryor's whereabouts and conduct on the night of the murder, such denials of the alleged facts mentioned constituted perjury; and if, in order to strengthen, corroborate, or render more probable the truth of the said false denials, he falsely testified to having been at Iola, when he knew he was not there, to being at the Odd Fellows' Lodge, Huun's store, and the candy store, when he knew he was not in fact at those places, nor any of them, and that he saw and conversed with Jacob Wipf and others named, and transacted business with Hermanson, at times when he knew he did not see such persons, nor any of them, nor transact such business with Hermanson, such corroborative statements became and were material to the issue as to the guilt of Pryor, tried in the murder case. And if such statements were wilfully and intentionally made falsely the defendant committed perjury as to each and every of the said corroborative statements so by him made, if they were so wilfully, falsely, and corruptly made. And these are the controlling and important questions that you are called upon to determine from the whole evidence in this case: Was *Hanscom* in the city of Waupaca, at the places, at the times, and with the persons mentioned, on the night of the murder, as charged by the prosecution, and did he, in fact, ride with Pryor from the alley in the rear of Stout's saloon, in this city, to Iola? If he was in this city and at the localities mentioned, and did in fact ride with Pryor to Iola, then did he knowingly and wilfully, with a corrupt purpose to withhold and conceal the truth as to such facts from the court and jury in the trial of the murder case, on his oath deny the same? If he did, he thereby committed perjury. And if you shall conclude that the defendant knowingly and wilfully testified in the

respects just mentioned, then were the several statements
sworn to by him on the murder trial, before referred to, to
the effect that he was at Iola during the evening and night
of October 7th, at the Odd Fellows' Lodge, the store, and
candy store, and with the persons named, false, and known
to be so by the defendant when he so testified? If they
were so falsely testified to, and with a corrupt purpose on
the part of the defendant thereby to strengthen and add
credibility to the previous statements falsely made, then
such statements, and each of them, constituted perjury, as
charged in the information."

Passing from this question, we come to the question of
the exclusion of certain evidence, which is alleged to be
error. It appears that Mr. Goldberg was placed on the
stand by the state, and testified to the confession or state-
ment made by *Hanscom*, and related its terms. The witness
was cross-examined at great length, and, during the cross-
examination, it appeared that he gave *Hanscom* a copy of it
after it was made, and kept one copy himself, but that *Hans-
com's* copy was returned to Goldberg about the time the
murder trial was beginning. These facts having appeared,
counsel for the defense asked the question, "How did you
get that paper back?" In reply to this question, the wit-
ness replied at length, detailing information which he had
received as to a secret meeting between Mr. Sanborn, one of
the attorneys for the defense, and *Hanscom*, and also as to
the alleged borrowing of a large sum of money by Mr. San-
born and one Richard Lee at a bank in Waupaca. As a re-
sult of this information he became suspicious that *Hanscom*
was about to play double with him, and demanded of *Hans-
com* the return of the statement, and it was returned. The
cross-examination was carried to great length on these sub-
jects, and it is now substantially claimed that the admis-
sion of the testimony was error. This claim is untenable.
The defense voluntarily went into the field, and produced

the testimony which they now complain of by plying the witness with question after question, without even moving to strike out the answers, and they cannot now say it was error to receive it.

Another question arises connected with this same matter. Mr. Sanborn, one of *Hanscom's* attorneys, was called as a witness, and stated that he had several interviews with the plaintiff in error during the murder trial. He was then asked whether at such interviews he said anything to *Hanscom* about his receiving any money for testifying or not testifying in the action. The question was objected to by the state as immaterial, and the objection was sustained, the circuit judge making the following remarks upon announcing his ruling: "I feel obliged to hold that this testimony is immaterial to the issue that is on trial. While I appreciate the feelings of the counsel for the defendant, their anxiety to put in testimony here upon the point indicated, I feel that there is no proof here to call for it, for the only purpose it could serve would be to exonerate parties that are not on trial. The only testimony that is material here upon this matter is as to the sayings and doings of *Mr. Hanscom* himself, as tested by his own conduct and by his own sayings. There is not a particle of proof here — not a shadow — upon which any man of any sense at all would, for a single moment, assume or believe that anything transpired that reflected upon the integrity of the counsel in that murder case. All that is here is merely hearsay. It is in because nobody objected to it. It would have been shut out if it had been objected to by counsel at that time; but, as suggested by Mr. Williams, if I allow the defense to go in now and show the truth in that matter, as they claim it to be and as the law presumes it to be in the absence of any proof, if I allow proof to be offered by them, I should have to let the other side, if they offered to and wanted to and could, offer proof on the other side."

This ruling was plainly right.  The testimony of Mr. Gold-
berg to the effect that he had heard a rumor of possible tam-
pering with the witness was not evidence of the fact.  It was
mere hearsay, and would not have been in the case except
for the fact of its being dragged in by the defense.  The
circuit judge, in the above ruling, plainly told the jury that
there was absolutely no proof of any such thing in the case.
It is true that there was some evidence given on the part of
the state, by a witness named Corcoran, to the effect that
*Hanscom* made some remarks to him indicating that he ex-
pected money from some one for "going back" on the state-
ment he had made to Goldberg; but the remarks were so
vague and indefinite that they hardly rise to the dignity of
affirmative testimony showing that there had been any offer
in fact made.  We think the circuit judge was right in say-
ing that there was no proof of anything reflecting on the
integrity of counsel for the defense in that case.  Such being
the fact, and the court having said so plainly and emphatic-
ally in the presence of the jury, it was no error to refuse
to receive the testimony of Mr. Sanborn on the subject; nor
was it error to neglect to say to the jury in the general
charge that there was no evidence tending to show any cor-
rupt purchase of *Hanscom's* testimony, because the jury
had been once emphatically told that fact in terms which
must necessarily have made a greater impression on their
minds than any sentence of a charge.

Nor was there any error in refusing to compel the state
to elect upon which separate statement or statements made
by *Hanscom* it would ask for a conviction.  The statements
composing each story necessarily hang together, and any
separation of them is practically impossible.  Either the
story told Mr. Goldberg was true *in toto and* the story told
on the witness stand false *in toto*, or *vice versa*.  There can
be no middle ground.  There is no possibility of the con-
struction of any theory on which it can be said that part of

one story is true and part of the other is true; nor is it possible to say that a part of the statements were honest mistakes and a part wilful perjury.

There were a number of other exceptions taken, but after careful examination of the case we do not deem them well taken, nor do we deem it necessary to notice them in detail. The plaintiff in error seems to us to have been fairly tried, and his guilt amply proven. The charge to the jury was a model in its diction and in its lucid statement of the law governing perjury. The judgment must be affirmed.

*By the Court.*— Judgment affirmed.