## THE STATE v. GORDON, Appellant.

### Division Two, May 22, 1906.

1. **JURISDICTION: Special Judge: Re-election: Nunc Pro Tunc Judgment: Signing Bill of Exceptions.** A judge of another circuit who is called in to try a case does not lose jurisdiction of the case by reason of the expiration of his term of office, where he is elected to succeed himself. And, therefore, such judge has authority to enter a *nunc pro tunc* judgment and sentence as of the date of the verdict, though the general election intervened and he was re-elected between the date of the verdict and the date of the entry of the *nunc pro tunc* judgment, and sentence; and he had authority, also, after his re-election, to grant an extension of time for the filing of the bill of exceptions, and to sign the bill.

2. **NUNC PRO TUNC ENTRY: After Case Appealed.** The circuit court has authority, by *nunc pro tunc* entry, to correct its records as well after as before appeal taken.

State v. Gordon.

3. **INFORMATION: Perjury.** · An information charging perjury, which names the cause in which the alleged perjury was committed and the court in which the cause was being tried, which states the materiality of the issue so that the court can determine upon it, sets out the facts alleged to have been sworn to, negatives their truth, and properly assigns perjury on them— is sufficient.

4. ———: ———: **All Statements in One Count.** Where all the false statements which defendant is charged with making relate to the same transaction, it is proper to set them all out in one count of the information.

5. ———: ———: **Two Informations: Motion to Quash: Presumption.** Mere statements, in a motion to quash the information, that two informations were filed, both charging defendant with perjury, and that the one forming the basis of the prosecution was the first one filed, do not prove themselves. And in the absence of anything in the record to sustain this contention, the presumption will be indulged in favor of the correctness of the action of the trial court overruling the motion.

6. **CONTINUANCE: Motion for New Trial: Disqualifying Sheriff: Bill of Exceptions.** Where the application for a continuance is not incorporated in the bill of exceptions, the assertion in the motion for new trial, that the court erred in overruling the application, does not preserve it for review. And for the same reason, the assignment that the court erred in overruling defendant's motion to disqualify the sheriff and appoint another person to summon the special venire, can not be reviewed.

7. **PERJURY: Res Gestae.** In a prosecution for perjury, the whole *res gestae* of the transaction, including declarations of the participants made at the time, may be adduced in evidence against the accused, to show that his testimony as to some of the particulars of the transaction was false.

8. ———: **Instructions.** Instructions in a perjury case, set out in the statement, *held* to cover all the issues involved and to be very fair to defendant.

9. **INSTRUCTIONS: On All Law of Case.** If defendant desires the court to give further instructions upon the issues in the case, he should request the court so to do, and call its attention to its failure so to do, at the time the instructions are given.

10. **JURISDICTION: Judge of Fifteenth Judicial Circuit: Criminal Case in Another Circuit.** The judge of the Fifteenth Judicial Circuit has authority to try a criminal case in another circuit, although he has no criminal jurisdiction in his own circuit. [Following State v. McCarver, 194 Mo. 717.]

11. PERJURY: Several Assignments: Proof of One: Instruction: Withdrawing Assignment. Where several assignments of perjury are laid, the charge will be sustained if any one of them be proved, if that by itself be sufficient to constitute an offense. And the fact that the court failed to instruct the jury that they should not take into consideration, in arriving at their verdict, a certain assignment of perjury against defendant, was in effect a withdrawal of that assignment from the consideration of the jury and an abandonment thereof by the State of which defendant has no right to complain.

Appeal from St. Francois Circuit Court.—*Hon. Samuel Davis*, Special Judge.

AFFIRMED.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) The information, which was duly verified, is sufficient in form and substance. It is fully up to the requirements of the statute, and informations and indictments similar to it have been approved. R. S. 1899, secs. 2033 and 2039; State v. Cave, 81 Mo. 450; State v. Huckeby, 87 Mo. 414. It was proper to name in one count all of the false statements with which defendant was charged, especially as all of said statements related to the one transaction. Cover v. Com. (Pa.), 8 Atl. 196; Hanscom v. State, 93 Wis. 273. (2) This court cannot consider the question of the overruling of defendant's application for a continuance, as said application is not contained in the bill of exceptions. State v. Gatlin, 170 Mo. 354. (3) No error was committed in sustaining the State's motion for a special venire, a motion asking for same having been filed in time by the State. A special jury is provided for by our statute, section 3791, and this court has construed the statute to give that right to the State, as well as to the defendant. State v. Faulkner, 175 Mo. 574; State v. Lehman, 175 Mo. 624. But even if error was committed, defendant cannot com-

plain, as he has not preserved the motion for a special venire in the bill of exceptions. A motion of that kind is not a part of the record proper, and the only way to make it a part is to have same embodied in the bill of exceptions. Every presumption will be indulged in support of the proceedings of a court of general jurisdiction; and defendant must show that error was committed. State v. Hunter, 171 Mo. 435. (4) The evidence introduced by the State detailing the conversations between the two Letts and McCarver, the threats of McCarver, etc., all made in the saloon in the absence of defendant, was introduced upon the theory that the same constituted a part of the *res gestae*, that the same was competent, in explanation of the conduct of McCarver, the conduct of the Letts, and that the same tended to corroborate or contradict the witnesses as to the presence or absence of a pistol in the hands of Leo Lett at said time. Heflin v. State, 88 Ga. 152; Maynard v. People, 135 Ill. 433; Martin v. State, 33 Tex. Crim. 319. (5) It has long been the settled law of Missouri that the appellant must object to the giving of the respondent's instructions at the time they are given, and save his exceptions to the overruling of said objections. State v. Rambo, 95 Mo. 466; State v. Reed, 89 Mo. 168; State v. Day, 100 Mo. 242; State v. Craig, 79 Mo. App. 418; State v. Hayden, 61 Mo. App. 662; State v. McCarver, 194 Mo. 718. But even if this court cares to review the instructions, it will be seen that they correctly stated the law. State v. Blize, 111 Mo. 473; Wharton on Crim. Evidence, sec. 151; 2 Bishop's New Crim. Proc., sec. 934. (6) Where there are several assignments of perjury in an indictment, proof of one is sufficient to sustain a conviction. State v. Blize, 111 Mo. 473; State v. Bordeaux, 93 N. C. 560; Wharton on Crim. Evidence, sec. 151; 2 Bishop's New Crim. Proc., 934. (7) There was sufficient record to justify the trial court in making the order *nunc pro tunc*, sentencing the defendant. State v. Gartrell, 171 Mo. 504; Hayon v.

Grocery Co., 88 Mo. App. 245; Belkin v. Rhodes, 76 Mo. 651; Witten v. Robinson, 31 Mo. App. 525; Sperling v. Stubblefield, 105 Mo. 489; State v. Holland, 160 Mo. 667.

BURGESS, P. J.—The defendant was convicted in the circuit court of St. Francois county, and his punishment fixed at imprisonment in the penitentiary for the term of seven years, under an information filed by the prosecuting attorney of said county in the office of the clerk of said court, charging the defendant with the crime of perjury. In due time defendant filed motions for new trial and in arrest, which were overruled, and he appealed.

The alleged false testimony was given at the trial in the circuit court of St. Francois county in the case of the State v. O. P. McCarver, then pending and being tried in said court before Judge Samuel Davis of the Fifteenth Judicial Circuit.

At the time the information was filed under which defendant was convicted, Hon. Robert A. Anthony was sole judge of the judicial circuit of which St. Francois county formed a part; and at the November term, 1904, of said circuit court, the defendant applied for and was granted a change of the venue of said cause on account of the alleged prejudice of the Hon. Robert A. Anthony, the regular judge of that circuit, and he called in the Hon. Samuel Davis, judge of the Fifteenth Judicial Circuit, to try the case.

Defendant thereafter applied for a continuance on account of the absence of two witnesses, but his application was refused. A trial was then had, resulting in a conviction of defendant, as before stated.

The facts are substantially as follows: On November 16, 1903, the grand jury of St. Francois county preferred an indictment against said O. P. McCarver, charging him with murder in the first degree, in shooting to death, with a pistol, one Harry Lett, in said

county, on the 14th day of November, 1903. McCarver applied for and was granted a change of venue from Hon. Robert A. Anthony, the regular judge of said circuit, on account of the alleged prejudice of said Judge Anthony against him, and Hon. Samuel Davis, judge of the Fifteenth Judicial Circuit, was called in by Judge Anthony to try said case. A trial of said McCarver was had at the February term, 1904, of the circuit court of that county, before Hon. Samuel Davis and a jury. The defendant, Gordon, appeared then and there as a witness, was duly sworn by the deputy clerk of said court, and testified at said trial that he was in the city of Farmington on the night of the 14th of November, 1903, between nine and ten o'clock; that he was standing in front of the saloon run by Bentley & Ryan, in said city; that he saw Leo Lett meet Harry Lett near said saloon; that he heard Harry Lett ask Leo if he got it, and heard Leo Lett reply, "Yes, and a damn good one, too." That he then heard them arrange to go into said saloon together and assault said McCarver, while he, and others, were standing at the bar drinking. That he (defendant Gordon) saw Leo Lett and Harry Lett go into said saloon; then saw them through the front glass windows as they walked to the other end of the bar. That he saw Harry Lett standing with his elbow on the bar, and his right hand in his pocket, and saw Leo Lett try to pass or slip a pistol to Harry Lett, just before McCarver fired his pistol. That the curtains of the front windows of said saloon were down, so that he (defendant) could easily see, and did see, the men inside at the time of this difficulty. This testimony of defendant was proved by one of the jurors who tried the McCarver case, and also by the notes of Mr. James J. O'Connor, at that time the official stenographer of that court, and the one who took down the testimony at said McCarver trial. Defendant's said testimony was given in St. Francois county, Missouri. The State's evidence further tended to show that, at the time of and just

prior to the shooting of Lett by McCarver, no one was standing on the sidewalk in front of Bentley & Ryan's saloon; and that the defendant, Gordon, was not then in Farmington, but attended a shooting match at the home of James Field, some twenty or twenty-two miles from said city. That defendant went to the Field farm on horseback, reached there about two o'clock in the afternoon, fed the horse which he was riding, and stayed there with a number of other men the rest of the afternoon; that the defendant stayed there to supper, and also stayed all night with Mr. Field, remaining there till after breakfast the next (Sunday) morning. The date of this shooting match was proved by several persons—one man who made a payment on a note on that day, another who sold and delivered some hogs on that day, a third who received some interest on that day, a fourth who was clerk of a certain lodge that met that night, and a fifth who had just married on the Monday preceding, and went on that day with his bride to visit her father. The State's evidence also tended to prove that the curtains to the front windows of Bentley & Ryan's saloon worked upward from below, and that said curtains were up so high at the time of and for some time prior to the shooting, that it was impossible for a man to stand out on the sidewalk in front of said saloon and see over them into said saloon. The State's evidence further tended to show that Leo Lett did not try to pass a pistol to Harry Lett just before McCarver fired, nor at any other time, and that Leo Lett never had a pistol on that occasion. That McCarver shot and killed Harry Lett in St. Francois county, Missouri.

The defendant's evidence tended to prove that he was in Farmington on November 14, 1903; that he kept a horse there in a stable. That he used this horse to ride around the country, came and left town rather irregularly; but when he was in town, he stopped at a hotel over a saloon, which was opposite the Bentley & Ryan saloon. One of the witnesses who testified to

seeing defendant on that day was a daughter of O. P. McCarver, and another was Jesse Biggs, now of Ohio. Several of defendant's witnesses admitted that the curtains to the front window of that saloon were drawn nearly to the top at the time of the shooting, and they gave it as their opinion that a man could not stand on the ground or on the sidewalk and see over the top of said curtains. There was also some evidence tending to prove the defendant's good reputation for truth and veracity. Defendant did not testify.

At the close of the evidence on the part of the State the defendant asked an instruction in the nature of a demurrer to the evidence, which was refused, and defendant saved an exception.

The court, at the close of all the evidence, and over the objections and exceptions of defendant, instructed the jury as follows:

"1. The jury are instructed that if you believe from the evidence that at any time within three years before the 11th day of March, 1904, the defendant, George Gordon, in the county of St. Francois and State of Missouri, was sworn as a witness in a trial in the circuit court of St. Francois county, Missouri, in which the State of Missouri was plaintiff and O. P. McCarver was defendant, in which said defendant, O. P. McCarver, was then and there being tried under an indictment charging him with murder in the first degree for the killing of one Harry Lett on the 14th day of November, 1903, at said county of St. Francois, aforesaid, and that this defendant, George Gordon, then and there willfully, corruptly and falsely testified before the court and jury in substance and to the effect that he, the said George Gordon, together with one Jesse Biggs, was in the city of Farmington on the 14th day of November, 1903, and in company with said Jesse Biggs was standing in front of Bentley & Ryan's saloon, and that he, the said George Gordon, together with Jesse Biggs, stood and looked in through the front windows of said

State v. Gordon.

saloon just before the fatal shot was fired by which O. P. McCarver killed Harry Lett, and saw Leo Lett then and there attempt to hand or slip a revolver to Harry Lett, then in that event said testimony was material and pertinent to the issues in said cause, and if the jury believe from the evidence that said testimony was false and that said defendant, George Gordon, did not at said time stand and look through the front window of said Bentley & Ryan's saloon and did not then and there see Leo Lett attempt to hand or slip a revolver to Harry Lett, and that said defendant, George Gordon, willfully and corruptly, that is to say, knowingly and intentionally, testified falsely to said facts, you will find him guilty and assess his punishment at imprisonment in the penitentiary for a term of not less than seven years.

"2. The court instructs the jury that you ought not to convict the defendant unless you believe beyond a reasonable doubt that the falsity of the statements made upon which by the information filed by the prosecuting attorney, under these instructions the charge against him is based, has been to your satisfaction fully established, either by the testimony of more than one credible witness, and you are the sole judges of such credibility, or by that of one such witness corroborated by other evidence in the case, which convinces your minds of the truth of the testimony of such single witness to the fact, and of such falsity of the statements of the defendant, and not then unless you further find from the evidence beyond a reasonable doubt the existence of all the other elements of the offense, and of the facts necessary to authorize the conviction of the defendant, as defined in the instruction given you.

"3. The jury are the sole judges of the weight of the evidence and of the credibility of the witnesses, and in determining what weight they will give and what credibility they will attach to the testimony of the wit-

196 Sup.—13

nesses, they should take into consideration the manner of the witness on the stand, his or her interest, if any, in the result of the trial, the probability or improbability of his or her statements, together with all the other facts and circumstances shown in the evidence, and if you believe from the evidence that any witness has willfully, that is intentionally, sworn falsely to any material fact in issue, you are at liberty to disregard the whole or any part of said witness's testimony.

"4. The information is a mere formal charge against the defendant and is no evidence of his guilt of the charge therein contained, and no juror should permit himself to be in any way biased or prejudiced against the defendant on account of the filing of the information against him.

"5. The law presumes the innocence and not the guilt of the defendant, and this presumption of innocence attends the defendant throughout the trial and entitles the defendant to an acquittal unless the evidence in the case, when taken as a whole, satisfies you of defendant's guilt beyond a reasonable doubt, as defined in these instructions.

"6. Before you can convict the defendant you must be satisfied of his guilt beyond a reasonable doubt. Such doubt, to authorize an acquittal on the ground of reasonable doubt, must be a substantial doubt of the defendant's guilt with a view to all of the evidence in the case, and not a mere possibility of defendant's innocence.

"7. The previous good character of the defendant, if proved to your reasonable satisfaction, is a fact in the case which you ought to consider in passing upon the question of his guilt or innocence of this charge, for the law presumes that a man whose character is good is less likely to commit a crime than one whose character is not good. But if all of the evidence in the case, including that which has been given touching the previous good character of the defendant, shows him to be

guilty of the charge, then his previous good character cannot justify or excuse the commission of the offense.''

There are two preliminary questions presented by this record which it becomes necessary to dispose of before proceeding further in the discussion of the case: First, as to whether there was a judgment such as from which an appeal lies; second, as to whether a valid bill of exceptions was ever filed in the case.

With respect to the first proposition, it appears from the record that on the 24th day of November, 1904, the jury returned a verdict finding the defendant, Gordon, guilty of perjury as charged, and assessed his punishment at seven years in the penitentiary, but it does not appear from the record that judgment was rendered upon the verdict at the time, as required by section 2648, Revised Statutes 1899, nor sentence passed upon the defendant, as required by section 2658 of said Revised Statutes. But, thereafter, on the 21st day of February, 1906, at an adjourned term of the regular November term, 1905, of said circuit court of St. Francois county, Judge Davis, upon motion of the prosecuting attorney, with the consent of the presiding judge of said court, the Hon. Charles A. Killian, in the presence of and after due notice to the defendant, took the bench and caused to be entered upon the records of said court a *nunc pro tunc* entry of judgment and sentence of defendant as of November 25, 1904. The terms of office of both Judge Davis and Judge Anthony expired on the first Monday in January, 1905, but under the statute (sec. 8847, R. S. 1899), all officers elected or appointed by the authority of the laws of this State hold their offices until their successors are elected or appointed, commissioned and qualified. Judge Davis was re-elected and succeeded himself, while Judge Killian succeeded Judge Anthony in that circuit. If the jurisdiction of Judge Davis over the case terminated with the expiration of the term of his office, on the first Mon-

day in January, 1905, notwithstanding he was his own successor, he was without authority to make the said *nunc pro tunc* entry of judgment and to pass sentence upon defendant at that time, and there was no final judgment in this case from which an appeal would lie. Upon the other hand, if Judge Davis, after having been called in to try the case, proceeded to do so and did in fact try it, he acquired exclusive jurisdiction thereof (sec. 2597, R. S. 1899), and the *nunc pro tunc* judgment is a final and valid judgment from which an appeal lies, unless his connection with and jurisdiction of the case terminated with the expiration of his term of office, as before stated. It may be conceded that if Judge Davis had not been re-elected at the regular election in November, 1904, he would have had no authority whatever to enter the *nunc pro tunc* judgment and to pass sentence upon defendant, as it was only in his capacity of judge of the circuit court of the Fifteenth Judicial Circuit that he had such authority; but as he continued, without intermission, to be judge of that circuit, and his present or succeeding term of office as judge of said circuit, for which he had been duly elected, commissioned and qualified, commenced immediately upon the expiration of the term during which he presided at the trial of said case, there was, therefore, no vacancy in said office, and we are of opinion that he retained jurisdiction of the case, and had power and authority to render said *nunc pro tunc* judgment and to pass sentence upon the defendant. This is certainly the practical view of the situation, and does not in any way impinge upon the rights of the defendant.

Notwithstanding the case was pending in this court and the trial court had lost jurisdiction thereof at the time of said *nunc pro tunc* proceedings, still the trial court had not lost jurisdiction of its records, which it had authority to correct as well after as before the appeal, and make them conform to the truth as to what had occurred, or supply an omission in the records.

[DeKalb County v. Hixon, 44 Mo. 341, and authorities cited; Jones v. St. Joseph Fire & M. Ins. Co., 55 Mo. 342; Gamble v. Daugherty, 71 Mo. 599.]

It appears from the record that at the time the motions for new trial and in arrest were overruled, during the November term, 1904, of said court, the defendant, by entry of record, was given until February 16, 1905, to file his bill of exceptions; that on February 8, 1905, by an order entered of record by direction of Judge Davis, filed February 9, 1905, defendant was granted an extension of time until, and including, March 16; 1905, in which to file a bill of exceptions, and again, on the 6th day of March, 1905, the time in which to file said bill of exceptions was extended to, and including, the 15th day of April, 1905; said bill was signed by Judge Davis, and filed with the clerk of said circuit court on the 12th day of said month. It thus appears that of the several orders made by Judge Davis regarding the time within which the defendant should file his bill of exceptions, only one of these orders was made during the term of his office which expired on the first Monday in January, 1905, and all subsequent orders made by Judge Davis extending the time for filing said bill of exceptions were without authority, and the bill of no effect, unless for the reasons stated in the first paragraph of this opinion, he still retained jurisdiction of this case, which we have already held he did. It is true that it is provided by section 731, Revised Statutes 1899, that "in any case where the judge who heard the cause shall go out of office before signing the bill of exceptions, such bill, if agreed to be true by the parties to the action, or their attorneys, or shown to the judge to be correct, shall be signed by the succeeding or acting judge of the court where the case was heard;" but that section does not apply here, because Judge Davis did not go out of office, within the meaning of that section, but continued in office, and under such circumstances he alone had authority to sign the

bill. If this be not true, then there is no valid bill of exceptions in this case.

In the motion in arrest of judgment the point is made that the information is insufficient in that, as contended, it does not state facts sufficient to constitute an offense against the laws of Missouri. This assertion is clearly without merit. The information is in due form, and properly verified. It names the cause in which the alleged perjury was committed, and the court in which the cause was being tried; states the materiality of the issue so that the court could determine upon it; sets out the facts alleged to have been sworn to, negatives their truth, and properly assigns perjury on them; so that the information is in all respects sufficient. [Sec. 2039, R. S. 1899; State v. Cave, 81 Mo. 450; State v. Huckeby, 87 Mo. 414.]

It was proper to set forth in the same count in the information all of the false statements with which defendant was charged, as they all related to the same transaction. [Cover v. Com. (Pa.), 8 Atl. 196; Hanscom v. State, 93 Wis. 273.]

Defendant moved to quash the information upon the ground that two informations were filed against him, both charging him with perjury, and that the one forming the basis of this prosecution was the first one filed. But there is nothing in the record which tends to sustain this contention, and the mere statement in the motion falls far short of so doing. Under such circumstances the presumption must be indulged in favor of the correctness of the ruling of the court overruling the motion.

It is also asserted in the motion for new trial that the court erred in overruling defendant's application for a continuance; but the application is not incorporated in the bill of exceptions, and, therefore, is not before us for review. [State v. Gatlin, 170 Mo. 354.]

The action of the court in ordering a special venire, on motion of the State, was in accordance with section

3791, Revised Statutes 1899, as well as the rulings of this court in State v. Faulkner, 175 Mo. 546, and State v. Lehman, 175 Mo. 619; but even if error was committed, which we do not concede, defendant cannot complain, as the motion for a special venire is not embraced in the bill of exceptions, which it should be, in order to its review by this court.

The further assertion is made in the motion for new trial that the court committed error in overruling defendant's motion to disqualify the sheriff and to appoint another person in his stead to summon the special venire; but the motion for a special venire is not incorporated in the bill of exceptions, and, for the reason given in the preceding paragraph, is not before us for review.

Another point made by defendant is that the court, over defendant's objection, admitted improper, illegal, incompetent and irrelevant testimony on the part of the State; but it is not suggested or intimated what particular evidence was erroneously admitted, nor are we able to discover after an examination of the record. If the objection has reference to the evidence of what occurred in the saloon between the Letts and McCarver at the time of the killing of Harry Lett by McCarver, and we presume it has, such evidence was properly admitted as part of the *res gestae*. Heflin v. State, 88 Ga. 151, was a prosecution for perjury, and it was held in that case that the whole *res gestae* of a transaction, including declarations of the participants made at the time, may be adduced in evidence against the accused, to show that his testimony as to some of the particulars of the transaction was false. So in Martin v. State, 33 Tex. Crim. Rep. 317, defendant was charged with perjury before the grand jury, concerning the theft of property by two other parties, and it was held that the declaration of these other parties, confessing the theft and stating what they had done with the stolen property, though made in the absence of the defendant, was

properly admitted as tending to prove the materiality and falsity of his statements.

The evidence referred to was properly admitted in this case because it tended to prove that Leo Lett had no pistol in his hands at the time of the difficulty, while the testimony of the defendant was to the effect that he had at the time a pistol in his hands which he attempted to hand or slip to Harry Lett.

At the close of the evidence upon the part of the State the defendant asked an instruction in the nature of a demurrer to the evidence, which was refused, but no exception was taken at the time to the action of the court in refusing said instruction.

The only objection to the instructions given was upon the ground that said instructions did not properly declare "all the law in writing to the jury necessary for them to consider in arriving at their verdict;" but this objection does not seem to be well grounded. The instructions covered every issue involved in the case, and were very fair to the defendant. Nothing more could be hoped for or expected on his part. Besides, the court was not requested by defendant to further instruct upon the issues in the case; nor was the court's attention called to its failure or omission to properly instruct at the time, if such were the fact. [State v. Cantlin, 118 Mo. 100, and subsequent cases.]

The point raised by the defendant in his plea to the jurisdiction of the Hon. Samuel Davis, judge of the Fifteenth Judicial Circuit, to try this case because he had no jurisdiction of criminal cases in said circuit, was expressly ruled adversely to this contention in the recent case of State v. McCarver, 194 Mo. 717.

While the point was not made at the time the instructions were given, and is not, therefore, before us for consideration, it is made in the motion for new trial and was argued orally on the hearing of the case in this court, that is to say, that "the court erred in failing to instruct the jury in writing that they should not take

into consideration, in arriving at their verdict, the assignment of perjury against defendant wherein defendant swore that he overheard a conversation between Leo and Harry Lett before they entered the saloon of Bentley & Ryan on November 14, 1904.'' There are several assignments of perjury in the information, each predicated upon material matters different from the other assignments, but it was not necessary to a conviction of defendant that the State should prove all or any more than one of the charges. Proof of either one of them, beyond a reasonable doubt, was sufficient. In State v. Blize, 111 Mo. l. c. 473, it is expressly held that, ''where several distinct assignments of perjury are laid, the indictment will be sustained if any one of them be proved, if that by itself be sufficient to constitute an offense.'' [Wharton on Criminal Evidence, sec. 131; Bishop's New Criminal Procedure, sec. 934.] The fact that the court failed to instruct the jury that they should not take into consideration, in arriving at their verdict, the assignment of perjury against defendant with respect to which it is alleged that defendant falsely testified that he overheard a conversation between Leo and Harry Lett before they entered the saloon of Bentley & Ryan on November 14, 1904, was in effect the withdrawal of that assignment from the consideration of the jury and the abandonment thereof by the State, of which defendant had no right to complain.

The evidence was somewhat conflicting, but its weight was for the consideration of the jury who found the defendant guilty as charged. The verdict was approved by the trial court, and there being nothing disclosed by the record which would justify interference by this court, the judgment is affirmed.

All concur.