UNITED STATES v. BLACKMON.

No. 8728.

District Court, W. D. Louisiana, Lake Charles Division.

Aug. 18, 1938.

H. G. Fields, U. S. Atty., and M. E. Lafargue, Asst. U. S. Atty., both of Shreveport, La.

D. D. Newman, of Leesville, La., and T. A. Edwards, of Lake Charles, La., for defendant.

DAWKINS, District Judge.

Defendant was indicted for perjury and has moved to quash the bill on the ground that it does not charge a crime.

The material parts of the indictment are as follows:

"That on or about the 28th day of April, 1937, in the Parish of Calcasieu, State of Louisiana, Western District of Louisiana, and within the jurisdiction of this Honorable Court, there came on for trial before the Honorable Ben C. Dawkins, United States District Judge of the United States District Court for the Western District of Louisiana, a Court of competent jurisdiction, a criminal case, entitled 'United States v. Neal Cooper', being case docket No. 8369 on the criminal docket of said Court, wherein the United States was

prosecuting one Neal Cooper, for the crime of possessing and operating an illicit whiskey distillery and for the unauthorized possession of whiskey mash, said United States District Court then and there having full and competent power and jurisdiction to hear and determine said trial; and thereupon it became, and was then and there a material question in the hearing of said criminal trial, whether the said Neal Cooper possessed or owned a copper coil which formed a part of the illicit still found by the Internal Revenue Agents on May 6, 1936, this being a case in which oaths were authorized to be administered by the laws of the United States, upon which said trial one, W. J. Blackmon, appeared and was called as a witness and was then and there duly sworn by the Deputy Clerk of the Court, aforesaid, one, Charles B. Forshee, he, the said Deputy Clerk, having then and there competent authority to administer oaths before the Court, aforesaid, and he, the said W. J. Blackmon, on April 28, 1937, wilfully swearing that the testimony which he, the said W. J. Blackmon, would give the Court there touching the matter then in question at said trial, would be the truth, the whole truth and nothing but the truth; and on and during the trial of the case, aforesaid, the Government introduced as physical evidence a copper coil of the type used on illicit distilleries for condensing alcoholic vapor, and by testimony of the investigating officers showed that said coil was found in a smoke-house situated on Neal Cooper's premises and in his possession and under his control; that the defense made no denial as to the finding of said copper coil but contended that same was the property of Neal Cooper's father, now deceased, and by witnesses endeavored to show that the coil had been stored unused in the smoke-house since Neal Cooper's father's death, among the witnesses being W. J. Blackmon; that W. J. Blackmon, while testifying, stated that he had seen the copper coil in question in Neal Cooper's smoke-house prior to the said Neal Cooper's arrest, and that at this time he had recognized the copper coil as being that of Neal Cooper's father and had at this time so remarked to Neal Cooper; wherefore, on cross-examination, it became material to inquire why he, the said W. J. Blackmon, happened to be in Neal Cooper's smoke-house at that particular time, and in answer to said question the said W. J. Blackmon stated that he had visited the Neal Cooper premises about four or five days prior to Neal Cooper's arrest for the purpose of purchasing hog meat from the said Neal Cooper for his tenants, and that the said W. J. Blackmon then and there feloniously, falsely, knowingly, maliciously, wilfully and corruptly testified, in response to further questioning, in substance, as follows, to-wit:

"That he, the said W. J. Blackmon, at said time and place, and on the occasion of said visit, stated that he had purchased a quantity of hog meat, namely 110 pounds, at the rate of seventeen cents per pound, for three of his tenants, and named them as being Lee Cooper, Ed Speaks, and Corbon Blackmon, and stated that he had given thirty-five pounds of hog meat to Lee Cooper, twenty-five pounds of hog meat to Ed Speaks, and fifty pounds of hog meat to Corbon Blackmon, whereupon he left the witness stand and later, during the course of the trial of Neal Cooper, was placed back on the stand by Neal Cooper's attorney, at which time he stated to the Court that he had made an error in naming one of the men to whom he had given hog meat, allegedly purchased from Neal Cooper, and that instead of Lee Cooper, he had meant Lee Jordan, and testified that both men had been tenants on his place at the time in question and he had become confused in their names, when, in truth and in fact, as the said W. J. Blackmon then and there well knew, the testimony which he then and there did wilfully give, under oath, was then and there false, in that he did not purchase any quantity of hog meat from Neal Cooper at that time and place and on said occasion for the said Lee Jordan, Ed Speaks and Corbon Blackmon, and that he at no time gave the said Lee Jordan thirty-five pounds of hog meat, and the said Ed Speaks twenty-five pounds of hog meat, and the said Corbon Blackmon fifty pounds of hog meat, and that the said Lee Jordan, Ed Speaks and Corbon Blackmon, at the time of said visit by the said W. J. Blackmon to the premises of Neal Cooper, as aforesaid, were not tenants of the said W. J. Blackmon, in all of which particulars the testimony, statements and declarations so testified and deposed unto by the said W. J. Blackmon were then and there material matter in and to the said criminal trial so heard, as aforesaid, and were then and there not true, but false, and were then and there by the said W. J. Blackmon not believed to be

true, but were then and there by him believed to be false."

Of course the main issue in the case in which the present defendant testified and out of which the charge of perjury grew, was as to whether a still, including the coil mentioned in the indictment in this case, had been used or possessed by Cooper for the purposes of or in connection with the manufacture of illicit liquor. The clear purpose of the testimony and the impression which Blackmon intended to convey to the jury, in testifying as he is charged to have done in the indictment, was that this was an old coil, belonging to the father of the accused in that case, which had been in the smoke-house of Cooper for a long period of time, and therefore could not have been a part of or connected with the other paraphernalia which was found near the premises of Cooper, indicating that a still had been recently operated. On cross-examination, the attorney for the government was naturally concerned to know what was the occasion for Blackmon's going into the smoke-house of the accused in that case, which would, to say the least, have been somewhat unusual as compared to a visit in the residence. In order to bolster or support the reasonableness of his statement that he did go into the smoke-house, the defendant testified to the plausible circumstances that he went there to purchase meat for his tenants. If true, it tended to give credence to his statement that he had been there and had seen and recognized the coil as belonging to Cooper's father. If he had not gone there to purchase meat and had no other reasonable object in doing so, and the jury had known that his statements as to these matters were false, they would naturally have been disposed to attach less weight to Blackmon's testimony, and might have thought it unworthy of belief at all.

 Perjury may be committed, not only as to the main issues in the case on trial, but where a witness knowingly fabricates details in order to strengthen his credibility as such, he may be convicted for falsely swearing to a collateral matter with intent to fortify the testimony on some other point. Hanscom v. State, 93 Wis. 273, 67 N.W. 419, 421 (citing 2 Wharton Cr.Law, [10 Ed.] Sec. 1277; 2 Bishop, New Cr. Law, Sec. 1037); Coleman v. State, 6 Okl.Cr. 252, 118 P. 549; Metcalf v. State, 8 Okl.Cr. 605, 129 P. 675, 44 L.R.A.,N.S.,

513; People v. Albert, 91 Cal.App. 774, 267 P. 587, 588; Fields v. State, 94 Fla. 490, 114 So. 317.

 My conclusion is that the indictment alleges facts and circumstances surrounding the testimony of defendant sufficient to show its materiality to the case in which it was given and that the motion to quash should be overruled.

Proper decree should be presented.