## THE STATE ex rel. A. JUDAH v. JAMES L. FORT, Judge.

### In Banc, March 25, 1908.

In 1907 the Legislature passed an act which in its first section says "an additional division to be known as division two is hereby created in and for the criminal court of Jackson county" and "the additional office of judge of the criminal court is hereby created," and gave him "all the powers of a circuit judge in criminal cases." By section 2 it was provided that "whenever, in the opinion of the judge of division one of the criminal court, the business of said court shall require the assistance of an additional judge to promptly dispose of the same, said judge shall notify in writing the judge of division seven of the circuit court, and thereupon said judge of division seven shall open said division two of said criminal court and proceed with the business thereof, and continue in the performance of such duties until, in the opinion of the judge of division one, such assistance is no longer needed." By section 8 it was provided that "change of venue shall be allowed by said criminal court from one division to the other division for any legal reason now allowed by law, that may be alleged against the judge of the division to which the same is made." Petitioner, A. Judah, was indicted in the criminal court, and made application for a change of venue, alleging the prejudice of the judge of the division called by the

act Division One. It does not appear that the judge of Division One had at that time notified the judge of Division Seven that he needed his assistance. The judge made an order calling Judge Fort, of another circuit, to try the case, and thereupon Judah made application for a writ of prohibition against Judge Fort, on the theory that the act required the case to be sent to Division Two for trial.

1. **PROHIBITION: When Granted.** The writ of prohibition may go whenever judicial functions are assumed not rightfully belonging to the court or person assuming them. Generally speaking, it is available to keep a court within the limits of its power in any particular matter, as well as to prevent the excess of jurisdiction in a cause not given to it by law.

2. **CONSTITUTIONALITY OF LAW: Presumption.** There is a strong presumption in favor of the constitutionality of a legislative act. It will not be declared invalid by the courts unless its unconstitutionality is so manifest as to leave no room for reasonable doubt.

3. **————: Title.** The title of an act is of value in determining the scope and constitutionality of the act itself.

4. **————: Special Law: Confined to one County.** Legislation authorized by the Constitution cannot be regarded as local or special, though its application is purely local. Whether a legislative act be a local or a general law must be determined by the generality with which it affects the people as a whole rather than by the extent of the territory over which it operates; if it affects equally all persons who come within its range it can be neither special nor local within the meaning of the Constitution.

5. **————: ————: Criminal Court of Jackson County: Change of Venue.** So that the Act of 1907, adding another division to the criminal court of Jackson county, providing that the judge of Division Seven of the circuit court should preside as the judge of Division Two of the criminal court and that Division Seven should resolve itself into a division of the criminal court whenever the judge of Division One should in writing inform the judge of Division Seven that the business of his court requires the assistance of an additional judge, and further providing that changes of venue, because of the disqualification of the judge, should be from one division of the criminal court to the other, while it includes in its scope but one court and that the criminal court of Jackson county, is not a special law within the meaning of the Constitution, although it denies to the disqualified judge of one division the right to call in any other circuit judge in the State to try the case, but compels him to send the case to the other division of the criminal court or to call in that judge to try it.

6. ———: ———: Creation of Court. The Act of 1907, in providing that whenever in the opinion of the judge of Division One of the criminal court the business of his court shall require the assistance of an additional judge to promptly dispose of the same, he shall notify in writing the judge of Division Seven of the circuit court, and thereupon the judge of Division Seven shall proceed to open Division Two of the criminal court and proceed to try the cases sent to it by Division One and so continue until in the opinion of the judge of Division One such assistance is no longer needed, did not make the existence of said Division Two as a criminal court depend upon the whim or opinion or fiat of the judge of Division One. But the act, by section 1, declaring that "an additional division, to be known as division two, is hereby created in and for the criminal court of Jackson county," created a court, and did not leave it optional with the judge of Division One to call Division Two into existence; and by section 8, declaring that "change of venue shall be allowed by said criminal court from one division to the other" and that "upon application for a change of venue in proper form, the cause shall be transferred to the other division," is implied a court already open and every immediate and incidental power necessary to the performance of the main judicial power.

Per WOODSON, J., in a separate concurring opinion.

1. SPECIAL LAW: Criminal Court. The courts will take judicial notice that Jackson county has a population exceeding fifty thousand, and, therefore, the General Assembly has the power to establish a criminal court in that county.

2. ———: ———: Jurisdiction of Circuit Judge. Under the Constitution the establishment of a criminal court within a county constituting a part or a whole of a judicial circuit, does not deprive the circuit judge of that circuit of jurisdiction to hear and determine criminal cases in the criminal court of that circuit or in any other criminal or circuit court of the State; but any such circuit judge may be called in by the judge of the criminal court of his circuit to try a criminal case in the criminal court. The most that the Legislature has power to do, by establishing a criminal court in a county, is to abate the jurisdiction of the circuit judge of such county to try criminal cases therein until he is called in by the judge of the criminal court.

3. ———: ———: ———: Act of 1907: Special Law: Change of Venue. That being the case the judge of Division One of the criminal court of Jackson county has the power to call in the judge of Division Seven of the circuit court of that county to try a criminal case; and that being true, when such circuit judge is so called in he has jurisdiction to try the criminal case.

Likewise, such circuit judge has jurisdiction to try a criminal case sent to him on change of venue by the judge of Division One of the criminal court. Hence, the statute of 1907 which says that criminal cases shall in certain contingencies be tried in Division Seven of the circuit court and designates it when trying criminal cases as Division Two of the criminal court, and requires the changes of venue to be taken to said Division Two, is not a special law.

**Per VALLIANT, J., dissenting.**

1. **CONSTITUTIONAL LAW: Act of 1907: Criminal Court of Jackson County: Change of Venue.** The Act of 1907, announcing its purpose to create "an additional division of the criminal court of Jackson county" and creating "an additional office of judge of said criminal court," is not unconstitutional; but the acts of the judge of Division One of said criminal court, in refusing to send to Division Two of said court a case on change of venue in which he had been disqualified and in calling in a circuit judge of another circuit to try the case, are not violative of the mandates of that act, said Division Two having never been called into potential existence.

2. ————: ————: ————: **Special Law.** The circuit and criminal courts named in the Constitution are not local tribunals, but component parts of the judicial system of the State. They are State institutions, and therefore the laws establishing them and prescribing their machinery are general laws, not local or special, although to some of them are given peculiar features rendered necessary by the local considerations in the places where the courts are to sit.

3. ————: ————: ————: **Specifying Certain Judge.** Nor is the Act of 1907 unconstitutional because it specified that the judge of a particular division of the circuit court of Jackson county (Division Seven) may be called to preside in either one of the divisions of the criminal court, since he is not designated by name, or referred to as an individual, but is designated only by his official title, and the act therefore applies, not only to the present judge presiding in Division Seven, but to any judge who at the time he is called may be occupying the office.

4. ————: ————: ————: ————: **Arbitrary Selection.** In determining the constitutionality of the act, it is not necessary for the court to know why Division Seven of the circuit court was designated as the one which should aid the criminal court in disposing of an overcrowded docket. A reason that is satisfactory to the lawmakers must be sufficient for the courts. But if the Act of 1907 had to be defended from the charge of arbitrary selection of Division Seven of the circuit court, the act

itself suggests good reasons why that extra burden was imposed on one rather than upon all divisions of the circuit court.

5. **CREATING OFFICE AND OFFICER: No Election, Etc.** The Act of 1907 said: "An additional division to be known as division two is hereby created in and for the criminal court of Jackson county, Missouri. The additional office of judge of the criminal court is hereby created." *Held*, that no such additional division was in fact created, for the reason that no provision whatever was made for the election or appointment of a judge for the said division, no term of office prescribed, no qualifications defined, and no compensation fixed.

6. **CIRCUIT JUDGE: Made Criminal Judge.** A circuit court has criminal jurisdiction, and the Act of 1907, imposing on one of the circuit judges of Jackson county the new duty to try criminal cases, and announcing that when he does so he shall be known as the judge of Division Two. of the criminal court, invested him with no greater authority than he already had. He was still a circuit judge, and nothing more.

7. ———: ———: **Optional Exercise by Judge.** But under the Act of 1907, neither Division Seven of the circuit court of Jackson county nor the judge thereof can exercise any criminal jurisdiction until that judge is called to do so by the judge of Division One of the criminal court. Besides, Division Two of the criminal court, when thus called into potential existence by the judge of Division One, must close finally when the judge of Division One says he no longer, for the present, needs the aid and assistance of Division Two.

8. ———: ———: ———: **Change of Venue: Discretion: Prohibition.** And section 8, which says that when an application for a change of venue is made in either division of the criminal court for a cause disqualifying the judge of that division the cause shall be transferred to the other division, must be read in connection with the whole act, and when so construed it means that a change of venue from Division One is to be made to Division Two when the judge of Division One has already in conformity with section 1 of the act called Division Seven of the circuit court into potential existence as Division Two of the criminal court and has not notified the judge thereof that his assistance is no longer needed. Section 8 assumes that Division Two is a criminal court open and trying criminal cases when an application for a change of venue is made in Division One; and, therefore, when petitioner seeks by prohibition to prohibit the judge of Division One, when application for change of venue is made, from notifying and requesting the judge of some other circuit to try the cause, and to compel him to send the case to Division Two for trial, the duty is on pe-

State ex rel. v. Fort.

titioner to show that the judge of Division One has already called the judge of Division Seven of the circuit court to his assistance and has called Division Two of the criminal court into potential existence for the trial of criminal cases, and unless he does that his application for prohibition should be denied, for the act invests the judge of Division One with a discretion to call or not to call the judge of Division Seven to his assistance when his docket is overcrowded, and that discretion this court cannot by *mandamus* or otherwise control.

Per GANTT, C. J., in a separate dissenting opinion with whom BURGESS, J., concurs.

1. CRIMINAL COURT OF JACKSON COUNTY: Act of 1907. If the judge of Division Seven of the circuit court of Jackson county should be called in by the judge of Division One of the criminal court, he would, under the Act of 1907, be only the judge of the circuit court to which he had been lawfully appointed or elected, and not a judge of Division Two of the criminal court, for the act created no such division.

2. ———: ———: Change of Venue. If so called in he would still be a judge of the circuit court temporarily called to assist the judge of Division One of the criminal court in the disposition of his over-crowded docket, and section 8 when read in connection with the whole of the act means that, having been so called in as a temporary assistant, a cause might be certified to him which the judge of Division One was incompetent under the law to try. But until so called in there would be, under the law, no such thing as Division Two of the criminal court, to which a cause could be sent on change of venue.

3. ———: ———: Division Two: Temporary Expedient. There is no such thing under the Act of 1907 as a permanent Division Two of the criminal court of Jackson county, but it is at most only a temporary expedient for the disposition of the docket when and only when the judge of the criminal court is of the opinion that he needs assistance to dispose of the business of his court, and in writing so notifies the judge of Division Seven of the circuit court.

4. ———: ———: ———: Change of Venue: Calling in Another Judge. And in the absence of a call upon and notification to the judge of Division Seven of the circuit court, there is no obstacle to the calling in by the judge of the criminal court of a judge of some other circuit court to try a case, when an application for a change of venue has been made against the judge of the criminal court.

5. ———: ———: ———: ———: ———: Prohibition. Unless the petition for prohibition, which has for its object to

prohibit the judge of the criminal court of Jackson county from calling in a judge of another circuit to try a case, in which an application for a change of venue disqualifying the judge has been filed, shows that at the time it was filed the judge of the criminal court had called to his assistance the judge of Division Seven of the circuit court and that such judge was at the time actually engaged in, and his court was at the time open for, the trial of the docket of said criminal court, the writ should be denied.

6. ———: ———: **Unconstitutional: Delegation of Legislative Power.** The Act of 1907, authorizing the judge of the criminal court of Jackson county to call to his assistance, whenever in his opinion the business of his court may require such assistance, the judge of Division Seven of the circuit court, who is then required to put aside all civil business and engage in the trial of criminal cases, is unconstitutional, not as a special law, but because on its face it delegates legislative power, which by the Constitution is vested exclusively in the General Assembly. The determination of the necessity for an additional judge of the criminal court is a legislative function, and the exercise of judgment and discretion in reference to that necessity can legally and constitutionally be made only by the General Assembly. The Act of 1907 delegated to the judge of the criminal court the judgment and discretion of determining when, in his opinion, the business of his court becomes so congested as to need the assistance of another judge or court to properly dispose of it, and until he so determines the judge of Division Seven of the circuit court can exercise no judicial power to try criminal cases, and the act thereby delegated a legislative function to a judicial officer.

7. ———: ———: ———: **Uncertainty.** Said act is unconstitutional also for lack of certainty and for failure to prescribe a rule of conduct.

## Prohibition.

Peremptory Writ Awarded.

*A. L. Cooper* and *Frank M. Lowe* for relator.

(1) Prohibition is the proper remedy. State ex rel. v. Elkin, 130 Mo. 90; State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Bradley, 193 Mo. 33; State ex rel. v. Fort, 178 Mo. 518. (2) The act created an additional division to be known as Division Two of the criminal court of Jackson county, Missouri, and under section 8 the duty of Judge Wallace was clear, and

the cause should have been transferred to Division Two of the criminal court of Jackson county. State v. Shipman, 93 Mo. 157. (3) The act is valid. State ex rel. v. Dabbs, 118 Mo. App. 663; Coffey v. Carthage, 200 Mo. 616; State v. Etchman, 189 Mo. 648. (4) The citizens and bar of Jackson county have recognized that Division 2 was created to meet a condition in this thriving and populous community; to expedite the transaction of the criminal business of this county; and to save costs and expense to the State incident to numerous defendants being kept in prison awaiting trial; and the only judicial expression sustaining the order calling in respondent, to which our attention has been called, is that sending this, and some 1200 other misdemeanor cases to Division No. 2, as prayed for in the various applications for changes of venue, would be violative of some ''inexorable rule of law that a defendant cannot choose his own forum which he would be doing if the cases were sent to Division No. 2, such choice of the forum being reserved to the judge against whom the applications were filed.'' We have been unable to find any authorities sustaining such a position, and believe that none exists. Expressions of this court are all to the contrary, and this court, as well as both courts of appeals, have uniformly held that a change of venue is a pure matter or creation of statute, and is regulated and controlled only by the provisions of the statute applicable.

*I. B. Kimbrell* and *R. H. Field* for respondent.

(1) The only possible question on the petition in this case, is, did the Missouri legislative act approved March 19, 1907, repeal or amend section 2597, Revised Statutes 1899, as to the criminal court of Jackson county? Otherwise, it cannot be doubted that the criminal court of Jackson county had the right under the general statute (section 2597) to select and call in Judge

Fort or the judge of any other circuit court in this state to try the case of State v. Judah, for running a theatre on Sunday. State v. Gillham, 174 Mo. 671. This very right as belonging to the Jackson County Criminal Court was affirmed in State v. Hudspeth, 159 Mo. 210. See, also, State v. McCarver, 194 Mo. 737. (2) The Missouri legislative act, approved March 19, 1907, contains no words expressing a repeal of section 2597, Revised Statutes 1899, neither does the said legislative act prohibit the judge of the criminal court from exercising the prerogative conferred by section 2597. Hence, the criminal court of Jackson county has the prerogative, as before the Act of 1907, to call in an outside judge under section 2597. Repeals by implication are not favored, and particularly is this true when it comes to cutting down and taking away the prerogative or jurisdiction of a court. This principle is emphasized in the case of State ex rel. v. County Court, 38 Mo. 403. See, also: Tackett v. Vogler, 85 Mo. 483; St. Louis v. Hollrah, 175 Mo. 845; Lockland v. Walker, 151 Mo. 213. (3) The first observation that may be made on this legislative act is this: While section 1 purports to create an additional division of the criminal court of Jackson county, section 2 seems to require that the proposed second division of the criminal court shall come into existence and operation only on the requisition of the regular judge of the criminal court; and that the existence and operation of said Division 2 of the criminal court shall finally adjourn and "stand adjourned until the assistance of said judge is again needed." So that it is not for the trial of change of venue cases that the regular judge of the criminal court is authorized to call into existence and operation the said Division No. 2 of the criminal court. It is therefore respectfully submitted that section 8, on which relator bases his right to be tried by the Hon. E. E. Porterfield, applies only when both

of the created divisions of the criminal court are *in esse* and in operation, as provided by section 2 of the act, which is not alleged in the petition herein. This court has characterized it as against the general principles of the law and the administration of justice to allow a defendant in a criminal case to select his own judge. State ex rel. v. Wofford, 119 Mo. 383. (4) A fair construction of section 9 of the act reserves to the judge of the criminal court all of his prerogatives conferred in section 2597, Revised Statutes 1899. (5) Conceding, on the holding of this court in Coffee v. Carthage, 200 Mo. 616, that the Act of 1907 would not be a special law if it applied equally to all of the judges of the circuit court of Jackson county, it does not so apply. This legislative act is so worded as to give all of the jurisdiction and prerogatives of the regular judge of the criminal court to the judge of Division 7 of the circuit court of Jackson county. This jurisdiction and prerogative is given to him and to none of the other seven circuit court judges in Jackson county. We respectfully submit that this 1907 legislative act is from that point of view a special law and is prohibited by section 53 of article 4 of the State Constitution, and that it is void both as a substantive enactment and as an indirect repeal of the general statute (sec. 2597, R. S. 1899). State v. Hill, 147 Mo. 63; Ashbrook v. Schaub, 160 Mo. 107; State v. Etchman, 189 Mo. 160; Henderson v. Koenig, 168 Mo. 356. (6) The act contains no provision governing changes of venue in any other county than Jackson county, nor any other court than the criminal court of Jackson county; hence, to hold this special legislative act as taking away from the criminal court (as here contended by relator) the prerogative to call in the judge of another circuit necessarily construes the special legislative act as a repeal of section 2597 as to Jackson county only, and to make it violative of the last clause

of section 53, article 4 of the State Constitution, which reads as follows: ''Nor shall the General Assembly indirectly enact special or local law by the partial repeal of a general law.'' Henderson v. Koenig, 168 Mo. 356. (7) Nor can the act stand as an amendment to section 2597, Revised Statutes 1899. Construed as an amendment to section 2597, the act is unconstitutional and void, because it does not set out section 2597 or state how it is amended, as is required by the Constitution, article 4, section 34. French v. Woodward, 58 Mo. 66; Copeland v. Pirie, 26 Wash. 481; Board of Fire Com. v. Trenton, 53 N. J. L. 566; 26 Am. and Eng. Ency. Law (2 Ed.), 706.

LAMM, J.—This is an original proceeding in prohibition.

Such preliminary and intermediate steps were had in the cause that, when finally submitted, it stood on an implied concession that allegations of fact well pleaded in the petition were true. Respondent's counsel make a statement of the case admirably fair and colorless, full and brief. We borrow and use it for the purposes of this opinion, viz.:

''The relator, A. Judah, was indicted in the criminal court of Jackson county, Missouri, at the September term, 1907, for running a Sunday theater in Kansas City, Missouri. Afterwards, on or about October 24th, 1907, by affidavit of himself and two witnesses, relator disqualified the Hon. William H. Wallace, the judge of the criminal court to try said cause. Afterwards on November 30th, the Jackson County Criminal Court made an order, setting the case down for trial January 7th, 1908, before the Hon. James L. Fort of Stoddard county, Missouri, Judge of the Twenty-second Judicial Circuit in this State, and notified and requested Judge Fort to appear and try the said cause in the Jackson County Criminal Court.

"The relator asks in the petition for prohibition herein, that Judge Fort be prohibited from trying the said cause in the criminal court, on the sole ground that the Hon. William H. Wallace, judge of the criminal court, was by the Missouri legislative act, approved March 19th, 1907, not then allowed to call in Judge Fort or any judge of another circuit under the general statute (Sec. 2597) and was not then allowed to call in any judge to try said cause except the Hon. E. E. Porterfield, judge of Division No. 7 of the circuit court of Jackson county, Missouri, at Kansas City."

Referring to the foregoing statement, we shall assume that counsel mean by "section 2597" of the Revised Statutes, a new section of that number substituted for the old section, repealed in 1905 (Laws 1905, p. 131). We shall assume also that counsel, when they say that Judge Wallace can only call in Judge Porterfield, judge of Division No. 7 of the circuit court of Jackson county, Missouri, mean to say that he can only call in the judge of Division No. 7, whomsoever he may be at the time.

It serves a wholesome purpose—a *judicial* purpose—to say that whatever fervor or color crept into the case in any of its preliminaries or in oral argument, has been cast aside, and it is now put to us by briefs presenting merely a serene and dignified legal question relating to a change of venue statute, to be determined dispassionately by the aid of right reason alone—to be settled, moreover, on the theory that vexed questions relating to the "sacredness of the natural right to labor," on the one hand, and the sacredness of the Christian Sabbath of our fathers, on the other, are not in the case at bar at all and, hence, may be safely left to take care of themselves when a concrete case involving questions of law relating to either reaches this court in due course. When such vexed questions reach this court they will receive in the future as they have

in the past a judicial consideration suited to their solemn character—such consideration as is due from the highest court of a free and Christian people on questions which (to borrow the animated language of Sir John Culpepper in the Long Parliament) "sup in our cup, dip in our dish and sit by our fire." The case itself, the parties litigant, the learned counsel on both sides and this court are to be felicitated not a little on this happy *status quo;* for, in the forum, Reason and Passion are an ill-assorted pair of handmaidens.

It will do to say, also, that the issue here comes close home to the administration of the whole body of the criminal law in Jackson county. This is so, because, until the question shall be settled as to whether a change of venue goes from Judge Wallace of Division One to Judge Porterfield of Division Two of that court, or *vice-versa,* there is left a wide open and anxious proposition—a proposition which may be injected by astuteness and desire into the trials of indictments on every grade of offense known to the criminal law in a great city. Therefore, it becomes a question that appeals, *sua sponte,* to the final and controlling source of judicial power; and, therefore, it ought to be settled out of hand and not left to be determined this way or that, *nisi,* subject to the hazard of being determined contrary to our views, and thus lodge reversible error in criminal trials in that county at the beck and call of defendants who seek changes of venue from Division One of that court. This is no fanciful dilemma. A change of venue is no unusual incident in a case. A change of venue in a criminal case, where the trial judge is basing his ruling on the unconstitutionality of the statute relating to the change of venue, would become an *ordinary* incident; for such ruling is an implied invitation to inject the question into the record to the end that an exception may be saved and a judgment against defendant be reversed, if, peradventure,

an appellate court finally sustains the constitutionality of the law. Such considerations as these have appealed powerfully to us to exercise our discretion in taking cognizance of this case. A stitch in time saves nine, an ounce of prevention is better than a pound of cure, in law as in everyday life.

I. It cannot be doubted that (subject to a judicial discretion to be exercised in issuing all discretionary writs) the writ of prohibition may go to confine a court within the limits of its jurisdiction whether such court has no jurisdiction at all or is exercising powers in excess of its rightful jurisdiction. So much is elementary. The writ may go whenever judicial functions are assumed, not rightfully belonging to the person or court assuming them. Generally speaking, it is available to keep a court within the limits of its power in any particular matter as well as to prevent the excess of jurisdiction in a cause not given to it by law. [State ex rel. v. Foster, Judge, 187 Mo. 590; State ex rel. v. Elkin et al., County Judges, 130 Mo. 90; State ex rel. v. Eby, Judge, 170 Mo. 497; State ex rel. v. Bradley, Judge, 193 Mo. 33; State ex rel. v. Fort, Judge, 178 Mo. 518.]

II. As presently seen, the constitutionality of certain provisions of the Act of 1907 (Laws 1907, p. 209), creating Division Two of the criminal court of Jackson county and providing for the distribution of cases between the two divisions, for changes of venue from one to the other, etc., is assailed. But before we set out to consider that question, we may profitably remind ourselves of certain fundamental and unbending rules controlling courts in the determination of a question of that grave character. For it must not be forgotten that those judges of solidest parts in wisdom—*i. e.*, the crowned oracles of the law—have set bounds to them-

selves and to judicial authority in determining the con-
stitutionality of a law.   Courts will not shrink from the
discharge of a constitutional duty in declaring a legis-
lative act unconstitutional in given conditions.   But
at the same time they should not go out of their way to
declare it unconstitutional. They will not, except under
an imperative call, incroach upon legislative power.
There is a strong presumption in favor of the constitu-
tionality of an act of the law-maker.   Therefore, it is
a settled and cardinal principle that an act of the leg-
islature is not to be declared void unless the violation
of the Constitution is so palpable, so manifest, as to
leave no room for reasonable doubt.   The question ob-
viously becomes one of high delicacy and discrimina-
ting use of judicial power.

As said by a great judge, Chief Justice SHAW (in
Wellington et al., Petitioners, 16 Pick. 1. c. 95):
"Courts will approach the question with great caution,
examine it in every possible aspect, and ponder upon
it as long as deliberation and patient attention can
throw any new light on the subject, and never declare
a statute void, unless the nullity and invalidity of the
act are placed, in their judgment, beyond reasonable
doubt." [State ex rel. v. McIntosh, 205 Mo. 1. c. 602;
State v. Layton, 160 Mo. 1. c. 499; State ex rel. v. War-
ner, 197 Mo. 1. c. 656.]   It is by such guiding lights,
and not otherwise, that we must determine the consti-
tutionality of the provisions of the Act of 1907.

III.   In effect, two views are taken, *arguendo,* of
the Act of 1907.  If we entertain either, the prelimi-
nary rule should be quashed and the peremptory writ
denied.   One is that certain provisions of that act are
within the interdiction of those provisions of the Con-
stitution directed against special legislation.   The oth-
er may be said to be that the act may be held consti-
tutional and yet it may be so construed that the general

statute relating to changes of venue is left operative in Jackson county, in spite of the provisions of the law of 1907. It may be conceded that if section 2597, as enacted in 1905, is held operative in Jackson county to the exclusion of the Act of 1907, then the judge of Division One of the criminal court did no more and no less than he was authorized by law to do when he called in Judge Fort to try relator. Under this concession we need 'not dwell upon the provisions of section 2597; but (the case requiring it) devote our attention to an analysis of the Act of 1907.

The title of that act is of value in determining the scope and constitutionality of the act itself. [Sedalia ex rel. v. Smith, 206 Mo. 346.] That title is as follows (Laws 1907, p. 209): "An Act to create an additional division of the criminal court of Jackson county, Missouri; to provide for a judge to preside over the same; to provide for officers to attend said court; to provide for the apportionment of cases now or hereafter filed in said court; to empower the judges of said court to makes rules for the numbering and distribution and transfer of cases therein, and to make rules for other purposes; to provide for holding court in any division thereof when the judge thereof shall be unable to hold the same; to provide for the transfer of cases between the court at Independence and at Kansas City; to provide for a place to hold said court; to provide for a stenographer to attend said court; *and to provide for changes of venue from said court and from each division thereof,* with an emergency clause."

Section 1 of the act is: "An additional division, to be known as division two, is hereby created in and for the criminal court of Jackson county, Missouri. The additional office of judge of the criminal court is hereby created. The judge of said court shall have all the powers of a circuit judge in criminal cases, and all acts now in force, or that may hereafter be passed

regulating the practice and proceedings in criminal cases shall apply to and govern the proceedings of said divisions of said court. The present judge of said criminal court shall preside over division one of said criminal court during the remainder of his term of office, and he shall be known as the judge of division one thereof.''

Section 2 reads: ''Whenever, in the opinion of the judge of division one of said criminal court, the business of said court shall require the assistance of an additional judge to promptly dispose of the same, said judge of division one of said criminal court shall notify, in writing, the judge of division seven of the circuit court of Jackson county, and it shall thereupon be the duty of said judge of said division seven of said circuit court, with all convenient speed (but not until the conclusion of the case which may then be on trial before him in said circuit court) proceed to open said division two of said criminal court, and to proceed with the business thereof, and to continue in the performance of such duties until, in the opinion of the judge of division one of said court, that such assistance is no longer needed, and the judge of division two shall thereupon adjourn said division two of said court finally; and said division shall stand adjourned until the assistance of said judge is again needed. All matters pending in said division two at the time of such adjournment shall be transferred to division one, and the judge of division one shall have full power to act in all such matters so transferred to his court. But the judge of division two shall retain authority to dispose of motions for a new trial, in arrest of judgment, and similar motions, to sign bills of exceptions, to allow appeals and to make such other orders in any cases tried before him as shall be necessary to protect the rights of appeals of the defendants in such cases. If the judge of said division two shall fail to make an

order transferring all matters to said division one prior to the adjournment of said court, the adjournment itself shall constitute such transfer.''

Section 3 is not material here. It provides that division two shall be attended by the clerk of the criminal court and the marshal of said county or by their deputies.

Section 4 provides that division two shall have and exercise all the power and jurisdiction possessed by division one and that all the laws now in force applying to the criminal court of Jackson county which apply to division one, shall apply to division two, except as modified by the act itself.

Section 5 gives power to the judge of division two to appoint a stenographer to perform certain duties, who shall be entitled to certain compensation, such compensation to cease as soon as division two adjourns.

Section 6 is: ''Whenever said division two of said criminal court is in session, the judge thereof shall try such cases and dispose of such business as may be agreed upon between the judges of division one and division two thereof; and in case they cannot agree thereon, all cases then pending, or hereafter filed, if not already numbered, shall be numbered consecutively according to their dates of filing, and all odd numbered cases shall be assigned to division one and all even numbered cases shall be assigned to division two, while said division two is in session.''

Section 7 provides that division two may sit at Independence whenever in the opinion of the judges of both divisions and the prosecuting attorney it is thought that assistance is needed there.

Section 8 reads: ''Change of venue shall be allowed by said criminal court from one division to the other division for any legal reason now allowed by law, that may be alleged against the judge of the division to which the same is made. Upon such applica-

210 Sup—34

tion for a change of venue in proper form, the cause shall be transferred to the other division, or the disqualified judge may require the judge of the other division to hold court in the division of the disqualified judge and try said cause. If both divisions of said court are not in session when an application for a change of venue is made, such division not in session may be opened within a reasonable time thereafter and proceed with the trial of said cause, or the judge not disqualified to hold court may hold court for the disqualified judge in the court room of the disqualified judge. If application for a change of venue in any division of said court shall be made against more than one judge thereof, the judge before whom the same is made shall determine whether or not the facts exist as charged against the other judge.''

Section 9 provides that when either judge is sick or absent or for any cause cannot hold his term or part of term in division, such term or part of term by request of the judge of division may be held by the judge of the other division and if no such request is made, or the judge so requested fails to hold such term or part of term, the judge from some other circuit shall be called in to hold court for such division for the occasion.

Section 10 provides that the judge of division seven of said circuit court shall receive the same pay when acting as judge of division two of the criminal court as he receives as circuit judge and from the same source.

Section 11 authorizes the judge of division two to direct where his court shall be held in Kansas City until such time as the county court shall provide a suitable court room. The payment of the cost of preparation and the rent is provided for.

Section 12 is: ''The judges of said criminal court in Jackson county are hereby empowered to frame and

enter of record in said court rules for the numbering of all cases now pending, or hereafter brought therein, for the proper distribution of cases for trial and disposition among the various divisions of said court, and for the transfer of cases to and from such division and between Independence and Kansas City, which rules may, in like manner, be changed from time to time as may be found necessary. Said judges, or a majority of them, may in like manner make from time to time such other rules for said court as may be agreeable to the usages and principles of law and not inconsistent with the code of procedure and the Constitution and laws of this State."

Section 13 reads: "So much of all acts now in force and applying to said criminal court as are not repealed by inconsistency of this act, are hereby continued and made to apply to the two divisions of said criminal court in said Jackson county."

Section 14 reads: "All acts or parts of acts inconsistent with this act are hereby repealed."

Section 15 reads: "The increase of the criminal business of said criminal court in said county being so great that the said criminal court as now constituted is unable to dispose of the same, because said business is in arrears, and is continually and rapidly accumulating and aggravating the delay in the administration of justice, an emergency is created within the meaning of the Constitution, which requires that this act shall go into effect immediately on its approval; therefore this act shall go into and have effect and be in force from and after its approval."

(a) Is the foregoing act bad under the constitutional provisions against special legislation?

Plainly it includes in its scope but one court and that is the criminal court of Jackson county. In one sense, therefore, it might be said to be a local law—a special act. If, now, the question were new, much

might be said pro and con, but it is not new. In the particular in hand, the Act of 1907 does not differ in substance from other legislation declared constitutional, over and over again, upon full argument and mature deliberation in this court. For instance, an act providing among other things for holding a term of the circuit court of Montgomery county at Montgomery City in said county. (Laws 1889, p. 68), State ex rel. v. Hughes, 104 Mo. 459, was sustained against the same attack. In 1887 (Laws 1887, p. 53) the Legislature provided for holding terms of court at Piedmont in Wayne county. The act was assailed as unconstitutional, but was sustained. [State v. Orrick, 106 Mo. 111.] The same point was made in relation to a court established at Higginsville in Lafayette county and the ruling there followed that in the Hughes and Orrick cases. [State ex rel. v. Field, 119 Mo. 611.] The same point was again here in State ex rel. v. Yancy, 123 Mo. 391, and was ruled the same way. Inferentially it was involved in Ex parte Renfrow, 112 Mo. 591, with a like result. So, in State ex inf. v. Dabbs, 182 Mo. 359. It was directly involved in State v. Etchman, 189 Mo. 648, and in Coffey v. Carthage, 200 Mo. 616, with a like result.

It is not wise to swell the opinion by restating the doctrines and propositions expounded in the cases cited. The general principle underlying all those cases was that legislation *authorized by the Constitution* (as was this, art. 6, sec. 31, Const.), cannot be regarded as local or special though its application is purely local, and that whether an act of the Legislature be a local or a general law must be determined by the generality with which it affects the people as a whole rather than by the extent of the territory over which it operates; and if it affects equally all persons who come within its range it can be neither special nor local within the meaning of the Constitution. That

general doctrine applies in the point now under discussion made against the Act of 1907, and saves the law.

In the Coffey case the assault was made on the provisions of the act dividing the circuit court of Jasper county into two divisions, and a point was raised relating to the procedure in changes of venue. The constitutionality of the provisions of that act relating to changes of venue was sustained. Like provisions relating to changes of venue in the several divisions of the circuit courts of Jackson and Buchanan counties have been enforced by this court. [Guy v. Railroad, 197 Mo. 174; Eudaley v. Railroad, 186 Mo. 399; Leslie v. Chase & Son Merc. Co., 200 Mo. 363.]

The upshot of the whole matter is this: The judicial system of the State is a *whole,* and therefore acts dealing with the courts have been usually held general though not applicable to every court of like nature in the State. [State *ex rel.* v. Shields, 4 Mo. App. 259.]

The reasoning of all the foregoing cases may be found crisply stated in the above generalization. [See a learned note to section 53 of article 4 of the Constitution, on page 203, Mo. Ann. Stat. 1906.]

We can add nothing to what was said in the cases cited, and, upon the doctrine there announced, the point is ruled against respondent.

(b) The Act of 1907 was assailed in oral argument from another side. The contention is subtle and somewhat baffles precision of formulation. Stated broadly it seems to be that Division Two is made a criminal court by legislative fiat. The title of the Act of 1907 and the provisions following that title put so much beyond dispute. But it is contended that under the somewhat obscure and involved provisions of section two of the act, though it is a full-fledged court armed with judicial power to try criminal cases in

Jackson county, yet, so far as the performance of each and all such duties is concerned in taking cognizance of cases, it comes and goes at the will and pleasure of Division One. Under some sleight of hand in judicial necromancy, hitherto unheard of, it acts a role in the childish play of Now You See It and Now You Don't See It. It is argued that it has nothing whatever to do until the judge of Division One says so. If he never says so, that ends it—it sleeps on until he awakens it into life and action. Being dormant, Division One may leave it in that pickle and go to the General Statutes for power to call in outside help in changes of venue.

If a court, a judicial entity, can be created of that sleepy and novel character it would seem to be under some doctrine more honored in the breach than in the observance. If that contention be sound, then in my opinion the court has no reason to exist and ought to be pruned off as an unconstitutional excrescence. It is but a barren fig tree and should be cut down; for why cumbereth it the ground? The thing is lukewarm, so to speak, and, being neither cold nor hot, should be spewed out of the mouth. If the only question here was Hamlet's old one, To Be, or Not to Be, and if the court could only *Be* when Division One says "Be," then the law should say, "Not Be," and put a quietus on the court itself. But if the whole act be considered from its four corners and all its intendments sought out, such notion is foreign to its provisions. If section 2 and section 8 be construed together and in the light of the manifest purpose of the law—the need and occasion of it—so as to give effect to all its provisions, it will be found that in so far as Division One may have more cases than it can try, it can dispose of such excess by transferring them (under rules to be adopted by the judges of both divisions) to Division Two. There is nothing unreasonable about

that.   It is a sensible working-plan, adjusting itself.
That is, *if two wills exist, there will be found a way,*
and when Division Two has performed the assigned
labor it stands adjourned so far as that particular work
is concerned.   But when we turn to section 8 we are
confronted with a different condition of things alto-
gether.   There is nothing optional in that section—
nothing which indicates that the judge of Division One
must call Division Two into action or session to receive
cases on change of venue.   To the contrary the statute
assumes it is open as a receptacle into which Division
One shall pour the jurisdiction it is parting with; and,
therefore, a defendant who takes a change of venue
can point to section 1 of the Act of 1907 which creates
Division Two and endows it with all the powers of a
court, and say to the judge of Division One:  "There
is the court, made such by legislative fiat, endowed with
every inherent and incidental power necessary to carry
out the purpose of its organization, and to which under
section 8 of the act you must transfer my case."   We
think the clear words of the law point unfalteringly
to the legislative purpose that Division Two should
receive and try changes of venue from Division One
and *vice versa*.   Division One has no will about it.   It
loses jurisdiction by the change and its responsibility
is at an end.   The change going, the law takes care of
it.   This being true, why should we approach that act
with a sour and critical disposition to wrest any other
meaning out of it?   Why turn a cold countenance on
the statute?   Accordingly, the language of section 8
being mandatory, what good reason can be given why
a change of venue should not be granted to Division
Two, precisely as we have held must be the case in
Jackson, Buchanan and Jasper counties and in the city
of St. Louis in civil cases?

It was argued orally (as we grasped it at the time)
that it is wise to leave to the judge of Division One

a certain flexibility of power in changes of venue to call in a circuit judge or a criminal judge from any other part of the State. But that is an argument to be addressed to the Legislature. Not only so, but it proceeds upon either a false or a fanciful premise. It proceeds on the implied theory that the judge of Division Two may be an unsafe judge in upholding the majesty of the law and that the judge of Division One would presumably be aware of that fact, and, so forewarned, he will seek to serve the majesty of the law by bringing in a better judge to uphold it. But what if the judge of Division Two at such crisis (when, if ever, it arises) is not subject to such infirmity? And what if the judge of Division One (when, if ever, the crisis does come) has a mote or a beam in his own eye, causing him to see and move obliquely for by-ends? One judge is as liable to be inefficient as the other. Wherever McGregor sits may be the head of the table of wisdom, but (alas!) who will point out *McGregor?* Under some circumstances the argument could be made to run precisely the other way, and the supposed sword be two-edged. The truth is that all such reasoning is unsound. The theory of the law is that every judge is a component part of the department of justice, a sound member of a sound body, that each member of the judiciary will seek the law and do it—will strive with might and main, bringing into play every endowed power of mind and heart, to fearlessly uphold the whole body of the law—will act righteously without fear and without favor. Any other theory cannot be tolerated for a moment. If the black evils suggested in argument should unfortunately come, there is a remedy under the policy of our laws. Those evils may be tempered by a wise use of the appointing power in case of vacancies—by a wise use of the elective franchise in case terms of judicial officers expire

and, if it comes to the worst—other remedies exist. They cannot be tempered by wresting a change of venue law from the lines chalked out in the statute.

The Act of 1907 is a crude piece of legislation—diffuse, cumbersome, involved, and, hence, troublesome to interpret—but when we consider that in creating Division Two and giving it full-fledged judicial power there is implied every intermediate or incidental power necessary to the performance of the main power, the trouble vanishes and we can see that Division Two in legal contemplation stands open and ready to receive cases on change of venue, and that it would violate the spirit and letter of the statute not to send such cases to that division.

The grant of power to try changes of venue, carried with it by necessary implication everything necessary to make such grant effectual (State ex rel. v. Perkins, 139 Mo. l. c. 118), including the power to meet, open court, try the case, adjourn and generally live, move and have its being as a court in that behalf.

Accordingly, we so hold.

The premises considered, Judge Fort had no legal right to take jurisdiction of relator's case. It should go to Division Two where Judge Porterfield by virtue of being judge of Division Seven of the circuit court has jurisdiction *ex officio* as judge of Division Two of the criminal court of Jackson county.

The preliminary rule is made absolute, and a permanent writ is awarded. We shall not assess the costs against Judge Fort. Let the relator pay them. It is so ordered.

*Fox, Graves* and *Woodson, JJ.,* concur—*Woodson* in separate opinion. *Gantt, C. J., Burgess* and *Valliant, JJ.,* dissent—*Gantt* and *Valliant, JJ.,* in opinions filed.

## SEPARATE CONCURRING OPINION.

WOODSON, J.—While I fully concur in all that has been said in the majority opinion filed herein; yet I wish to add a few observations regarding one phase of the constitutionality of the act creating the second division of the criminal court of Jackson county, not touched upon in said opinion.

By section 1 of article 6 of the Constitution of 1875 the judicial power of the State is vested in the Supreme Court, . . . circuit courts, criminal courts, etc.

Section 31 of said article prohibits the Legislature from establishing criminal courts, except in counties having a population of exceeding fifty thousand.

By section 28 of the same article the Legislature is authorized from time to time to provide one or more judges in circuits composed of a single county as the business of the circuit may require, and each judge thereof shall separately try cases and perform all other duties imposed upon circuit judges.

We will take judicial notice of the fact that Jackson county has a population in excess of fifty thousand.

It is clearly to be seen from reading the three sections of the Constitution, just mentioned, that the Legislature possessed the power to create an additional division of the criminal court of Jackson county. This power, however, is not disputed by the learned counsel for respondent, but it is contended that the act creating the second division of that court is unconstitutional and void because it is special and local in its operation, in this: that it confers jurisdiction upon only one of the several circuit judges of that county, namely, the one who presides over Division No. 7 thereof, to hear and determine criminal cases, and for that reason it is contended it is in violation of sections 32 and 53 of article 4 of the Constitution, which prohibits the Legislature from enacting any local or special law. The

ground of this contention is predicated upon what was said by this court in the case of State v. Hill, 147 Mo. 63.

In that case the Legislature in 1897 passed an act providing that the judge of the criminal court of Buchanan county might be called in by the circuit judge of any other county to hold a term or part thereof in such other county, and vesting him in such case with all the powers of a circuit judge. This court in holding that act unconstitutional, on pages 67 and 68, speaking through Judge SHERWOOD, used the following language: "The Act of 1897 is also obnoxious to other objections: Its operation is not uniform. In Buchanan county the judge of the criminal court has only 'such powers as the several judges of the circuit courts of this State have in criminal cases,' but whenever he steps over the line of Buchanan county he immediately assumes the proportions and jurisdiction of a circuit judge in civil as well as in criminal cases. Touching this topic of the uniform operation of a law, Judge COOLEY observes: 'Those who make the laws "are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for the rich and poor, for the favorite at court and the countryman at plough." This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments. [Const. Lim. (6 Ed.), 483, and cases cited.]' 'The Legislature may suspend the operation of the general laws of the State; but when it does so the suspension must be general and cannot be made for individual cases or for particular localities. [Ib. 482, and cases cited.]' By the general laws of the State the judges of the criminal courts of the State could not be called out of their respective counties to sit on a circuit bench in other counties; by the law in question that general law is suspended only in a particular locality, to-wit, Buch-

anan county. While in that county the judge of the criminal court is, as such judge of such court, subject to the control of the circuit court of his county, but when he is *dehors* the county, he becomes a controller of the criminal court of any county into which he may be called to exercise his newly-found and newly-fledged functions. Nor is it possible to separate the civil powers of the judge thus called in from his criminal, since the Legislature evidently had but one object in view —its purpose was evidently to confer both civil and criminal jurisdiction. This being the case, the whole statute must fail. [Cooley's Const. Lim., 211.]''

But none of the objections urged against the validity of that act are tenable in the case at bar. The act in question here does not attempt to confer jurisdiction in criminal cases on a judge who had no such jurisdiction under the Constitution, for the reason that said sections one and twenty-eight of the Constitution, in express terms, confer such jurisdiction upon each and every circuit judge in the State, and no such judge is shorn of that jurisdiction by the existence or the establishment of a criminal court within any county composing a part or all of his circuit. [State v. McCarver, 194 Mo. 717; State v. Gordon, 196 Mo. 185.]

In the former case, on pages 736 and 737, Judge BURGESS, in the discussion of this question, said: ''The statute authorizing the calling of a judge of another circuit to preside at the trial of a certain criminal cause pending in another circuit, under the circumstances and conditions therein provided, makes no exception against any judge who may not have jurisdiction of criminal cases in the circuit court in which he presides, because such jurisdiction is conferred upon a criminal court in that circuit; nor can any such exception be inferred from or read into the statute. Its terms apply to all circuit judges in this State, and the fact that Judge Davis did not have jurisdiction to hear and try crim-

inal cases in the Fifteenth judicial circuit in no way disqualified him from hearing and trying such in another circuit, when requested to do so by the judge presiding therein under the conditions provided by the statute. Suppose that in one county only of the Fifteenth circuit there was a criminal court having exclusive jurisdiction of criminal cases, would it be contended from that fact that Judge Davis would be disqualified from hearing and trying a criminal case in any other circuit when properly requested so to do by the judge of that circuit? Or, suppose Judge Anthony, under the provisions of section 1678, Revised Statutes 1899, had requested Judge Davis to hold the term or part of the term of the St. Francois Circuit Court, and Judge Davis had presided at the trial of defendant, could it be claimed that he was without authority to try the case because he had no authority to hear and try criminal cases in his own circuit? We think not. There is no difference in principle between the two propositions. Judge Samuel Davis has on several occasions, in response to requests made by the judge of the *criminal court* of Jackson county, presided at the trial of cases in that court. At one of such trials (State v. Taylor, 171 Mo. 465) the defendant was convicted of murder in the first degree, and upon appeal to this court the judgment was affirmed, with directions that the sentence of the law be executed. In addition to Taylor's case may be mentioned State v. Hudspeth, 159 Mo. 178; State v. Blitz, 171 Mo. 530; State v. Nelson, 181 Mo. 340; State v. Nelson, 166 Mo. 191, and in none of them was it ever intimated or suggested, so far as the records therein disclose, that he had no jurisdiction; nor do we think there can be any question as to his jurisdiction to try the case at bar." This case was cited and approved by this court in the case of State v. Gordon, supra, in which all the judges concurred.

In my judgment the establishment of a criminal court within a county constituting a part or all of a circuit does not deprive the judge of that circuit of jurisdiction to hear and determine criminal cases in that or any circuit or criminal court of the State, but merely suspends or holds in abeyance that power or jurisdiction until it is called into requisition by proper authority. This is the logical deduction it seems to me to be drawn from the two cases last considered. The Fifteenth circuit, over which Judge Davis presides, is composed of Saline and Lafayette counties, and each of them has a criminal court, and for that reason he has no authority to try criminal cases in either county; but we apprehend that it could not be seriously contended in the light of the cases of State v. Gordon and State v. McCarver, supra, that he would not have that power and authority if called in to try a criminal case by the judge of the criminal court of either of said counties. If a circuit judge has the jurisdiction to hear and try criminal cases outside of his circuit, when called in by the judge of another circuit, or the judge of a criminal court, then by parity of reasoning it must necessarily follow that he has the same authority when called in by the judge of the criminal court of a county composing a part or the whole of his circuit. And this has been the practice for years in all such courts of the State, and when the writer was on the circuit bench he was frequently called into the criminal court of Buchanan county and there tried numerous criminal cases, and it was never suggested, that I now recall, that he had no jurisdiction to try such cases. But for the argument's sake concede that I am mistaken in the conclusions just stated, yet it cannot be contended, in the light of those cases, and the statutes upon which they are based, that when a circuit judge is called in by the judge of another circuit or by the judge of a criminal court to try a criminal case, that, when so

called, he is not clothed with necessary legal authority and jurisdiction to try the cause; and that is true whether he had jurisdiction to try criminal cases in his own circuit or not. The statute upon that question is itself perfectly clear; but the cases before mentioned construing the statute make it doubly so, and removes the question from the pale of further judicial discussion. This being true, then when the Judge of Division No. 1 of the criminal court of Jackson county calls upon the judge of Division No. 7 of the circuit court of that county to try criminal cases, unquestionably he would be clothed with the same authority to do so as were the judges who were called in and tried the Gordon and McCarver cases, supra. Not only this, but the constitutional provisions before mentioned, in express terms, confer jurisdiction upon the circuit judges to hear and try civil and criminal cases in all the counties of the State, and permit the Legislature to establish a separate criminal court in any county which has more than fifty thousand inhabitants; but that provision is not mandatory. It may or may not do so, just as it sees proper. If it does not, then, as a matter of course, the circuit court retains jurisdiction of both civil and criminal causes regardless of the population of the county. But suppose the Legislature does establish a separate criminal court in such counties as it has done in the city of St. Louis and in the counties of Jackson, Buchanan, Greene and others, and concede that the Legislature has the power under the Constitution to not only abate the jurisdiction of the circuit judges in such counties to try criminal cases, but that it has the power also to entirely deprive them of such jurisdiction, and conceding further that the various acts of the Legislature creating the criminal courts of those various counties, either in express terms or by implication, deprived the circuit judges of those counties of all jurisdiction to try criminal cases therein and conferred

exclusive power upon the criminal courts so established, yet it cannot be logically contended that the Legislature cannot by an express act, such as the one here under consideration, restore to such circuit judges the jurisdiction to hear and determine criminal cases as fully and as completely as they possessed it before they were so deprived of that jurisdiction. And when the act in question conferred jurisdiction upon the judge of Division No. 7 of the circuit court of Jackson county to hear and determine causes sent to him on change of venue from Division No. 1 of the criminal court of the county, or by being called in by that court, or by the circuit or criminal courts of any other county, his jurisdiction is just as complete and perfect to try such causes as is that of the judge of the circuit court of Saline or Buchanan county when called in as provided by law.

By the act in question the Legislature conferred upon the judge of Division No. 7 of the circuit court of Jackson county the same authority and jurisdiction to hear and determine both civil and criminal cases that is possessed and exercised by the circuit judges all over the State, and he and they may be called into another circuit or criminal court when not prohibited by statute to hear and determine cases therein, as was held by the able and well-considered cases of Gordon and McCarver, supra.

I am, therefore, clearly of the opinion that the act in question is not vulnerable to the constitutional assaults before suggested.

## DISSENTING OPINION.

VALLIANT, J.—I am unable to concur in the majority opinion in this case and I deem the subject of sufficient importance to express my views as briefly as I can in a dissenting opinion.

The act of the General Assembly entitled "An Act

to create an additional division of the criminal court of Jackson county,'' etc., approved March 19, 1907, is not, in my opinion, unconstitutional, but I am also of the opinion that the acts of Judge Wallace, complained of in the petition in this case, are not in violation of the mandates of that act.

My reasons for saying the act in question is not unconstitutional are as follows:

The circuit courts and criminal courts named in section 1 of article 6 of the Constitution are not mere local tribunals, but are component parts of the judicial system of the State.    They are State institutions, and therefore the laws passed establishing them and prescribing their machinery are general laws, not local or special, although to some of them may be given peculiar features rendered necessary by the local considerations in the places where the courts are to sit.    [State ex rel. v. Hughes, 104 Mo. 459; State ex rel. v. Field, 119 Mo. 1. c. 611; State ex inf. v. Dabbs, 182 Mo. 359.] It is not a matter of mere local interest whether there be one, two or more courts having general criminal jurisdiction in Jackson county, or what judges shall preside over such courts; it is a State affair, and all the people are interested in it.    The act therefore does not violate section 53 of article 4 of the Constitution. Nor is the act unconstitutional in specifying that the judge of a particular division of the circuit court of that county may be called to preside in either one of the divisions of the criminal court; because the judge so liable to be called is not designated by name, not referred to as an individual, but is called only by his official title and it applies, not only to the present judge presiding in Division No. 7, but to any judge who at the time he is called may be occupying that office.    Why Division No. 7 was especially designated it is not necessary for us to know; it was for a reason satisfactory to the lawmaker, and that is sufficient.    But even if

210 Sup—35

the act had to be defended from the charge of arbitrary selection very good reasons could be conjectured; since the judge of that division is liable to be called at any time to quit his civil docket, giving him time only to finish a case the trial of which he may have already begun, and throwing all his other cases aside, he necessarily must arrange his docket, as well as he can, with an eye to that emergency, and the Legislature may have well thought that it were better to subject any certain one of the circuit court divisions to that uncertainty than all of them. Therefore I see no violation of the Constitution.

But this act is a very peculiar one. It starts off in the first section with the proclamation that "an additional division" of the criminal court of Jackson county is hereby "created," and that "an additional office of the judge of the criminal court is hereby created," but so far as the additional tribunal and the additional office are concerned the creation ends in that proclamation. Although in the first section we are led to expect the establisment of "an additional division," that is, a tribunal that had not theretofore existed, and "an additional office of judge of the criminal court," that is, a judicial office that had not theretofore existed, yet there is no provision in the act for election or appointment of an additional officer or prescribing his term of office. In the body of the act the only provision made for the exercise of judicial power is the authority conferred on the judge of the criminal court, who it says is thereafter to be called the Judge of Division One, to call one of the circuit judges to aid him in the disposal of criminal cases when he thinks he has more than he can dispose of with reasonable expedition. A circuit court has criminal jurisdiction, and although the General Assembly may establish a criminal court in a county having over 50,000 inhabitants and give it criminal jurisdiction, yet the subject

is still within the scope of the power of the Legislature and it may authorize a circuit judge to be called to preside in a criminal court or authorize a circuit court in its own capacity to try criminal cases; and that is all that this act has done. Notwithstanding the proclamation in the first section that an additional court and an additional judicial office have been created yet in point of fact there has only been a new duty imposed on an already existing court and an already existing judge. True the act refers to the circuit judge when he has been called in and is in the performance of duties imposed by the act as judge of Division No. 2 of the criminal court, but calling him by another name does not change his official character, nor does the laying upon him duties, which he did not before bear but which are appropriate to his office whenever the General Assembly choose to call them into action, alter his official character. He is given no new commission and he takes no other oath of office. It is by virtue of his commission and oath of office as circuit judge that he may be required to perform the duties imposed by this act. He is still a circuit judge and nothing more.

The Constitution requires that the judges of all courts of record shall be elected. [Sec. 30, art. 6.] And a vacancy in any office "unless otherwise provided by law" shall be filled by appointment by the Governor. But there is no provision in this act for the election or appointment of an additional judge of the criminal court of Jackson county.

In my opinion, therefore, whilst the Legislature, in passing this act, started out with the proclamation that a new court and a new office were thereby created, yet it stopped before it accomplished that purpose, if that was really the purpose, and branched off into authorizing the judge of the criminal court then existing to call to his aid one of the divisions of the circuit

court, already existing, and the judge thereof also already in official existence. All the rest of the act is but direction in the conduct of the business when the circuit judge shall have been called in.

Calling a thing by a new name does not give it a new character. Calling the court presided over by the judge of Circuit Court No. 7 division two of the criminal court does not make it an independent criminal court in the sense that it can come into potential existence otherwise than by being called into activity by the judge of the criminal court.

Neither division No. 7 of the circuit court nor the judge thereof can, under this act, exercise any criminal jurisdiction until that judge is called to do so by the judge of division one; and division two, after being called into action, must close finally when the judge of division one says he no longer, for the present, needs it. The language of the act on that point is too plain for construction, here it is:

"Sec. 2. Whenever, in the opinion of the judge of division one of said criminal court, the business of said court shall require the assistance of an additional judge to promptly dispose of the same, said judge of division one of said criminal court shall notify, in writing, the judge of division seven of the circuit court of Jackson county, and it shall thereupon be the duty of said judge of said division seven of said circuit court, with all convenient speed (but not until the conclusion of the case which may then be on trial before him in said circuit court) proceed to open said division two of said criminal court, and to proceed with the business thereof, and to continue in the performance of such duties until, in the opinion of the judge of division one of said court, that such assistance is no longer needed, and the judge of division two shall thereupon adjourn said division two of said court finally;

and said division shall stand adjourned until the assistance of said judge is again needed.''

Reading this act from beginning to end it means this and nothing more, to-wit: Whenever, in the opinion of the judge of the criminal court of Jackson county, ''the business of said court shall require the assistance of an additional judge to promptly dispose of the same'' he is given the authority, and it is made his duty, to call to his assistance the judge of division 7 of the circuit court and that judge shall open a court and try criminal cases assigned to it and he is to continue the existence of that court as a division of the criminal court so long as, and no longer than, the regular judge of the criminal court deems it necessary, and when he deems it no longer necessary he is to so notify the circuit judge and thereupon division No. 2 is to close finally and stand closed until in the opinion of the judge of the criminal court a necessity again arises for calling it into action.

Although the Legislature said in section 1 that ''an additional office of judge of the criminal court is hereby created'' yet the rest of the act shows that it did not mean what it said or else that it left the purpose unfinished. The language implies the creation of a new office, yet the term of the office is not prescribed nor how it shall be filled, whether by election or appointment. The body of the act shows that no new creation was intended but only a new use for an office already in existence.

All the rest of the act prescribing what the two divisions of the criminal court shall do and how they shall do it has in contemplation the condition existing of the circuit judge of division No. 7 having been called in to assist in the dispatch of criminal business and having not yet been notified that his aid is no longer needed. When once called in the act contemplates that he will continue until notified to ''adjourn finally,''

therefore there may be a time, temporarily, when the division is not in actual session though still in potential existence holding itself ready to exercise criminal jurisdiction.

Section 8 of the act, the provisions of which it is charged in the petition have been violated, must be construed in the light of the whole act and when so construed it means that the provisions of that section are to be observed when the fact is that the circuit judge of No. 7 has been called in conformity with the provisions of section 2, and has not been notified that his assistance is no longer needed. Even if we call the tribunal which the circuit judge No. 7 presides over, division No. 2 of the criminal court, still division No. 2 of the criminal court is not available for any purpose until the judge of division No. 1 calls it into activity and he alone is the judge of the necessity for doing so. Section 8 requires that when an application for a change of venue is made in either division for a cause disqualifying the judge of that division the cause shall be transferred to the other division. The very language of that section shows that it contemplates a situation wherein both divisions are in potential existence; but if the application for a change of venue is made in division No. 1 at a time when division No. 2 is not in potential existence the cause cannot be transferred to that division and the law nowhere requires the judge of No. 1 to call the circuit judge of No. 7 to open division No. 2 of the criminal court except when in his judgment it ought to be done, and no other court can by *mandamus* or otherwise control his discretion in that respect; he may be compelled to act, but he cannot be commanded what to do. Of course when an application for a change of venue is made, as in this case, he may if he sees fit call the circuit judge of division 7 to open division No. 2 of the crim-

inal court and then transfer the cause to that court, but that is a matter within his discretion.

In the absence of any showing that Division No. 2 of the criminal court was in potential existence when the application for a change of venue in this case was made Judge Wallace had the right to "notify and request the judge of some other circuit to try the cause," as prescribed in section 2597, Revised Statutes 1899.

For these reasons, in my opinion, the petition for a writ of prohibition ought to be denied.

## SEPARATE DISSENTING OPINION.

GANTT, C. J.—I fully concur with Judge VALLIANT that, notwithstanding the language in the first section of the Act of 1907, now under consideration, to-wit, "An additional division to be known as division two is hereby created in and for the criminal court of Jackson county, Missouri. The additional office of judge of the criminal court is hereby created," there was in fact no such additional division created, for the reason that no provision whatever was made for the election or appointment of a judge for the said division, no term of office prescribed, no qualifications defined and no compensation appropriated for his services. In legal contemplation we know of no such thing as a court dissociated from the idea of a tribunal consisting of one or more judges organized for the purpose of administering justice according to law. Bouvier says: "The one common and essential feature in all courts is a judge or judges, so essential indeed, that they are often called 'the court.'" The power to create and apportion the jurisdiction of a criminal court in counties having a population of fifty thousand, is vested in the Legislature, and the Legislature alone can provide for the filling of the office of judge of such a court either by election or appointment, and must fix the term of the said office and provide for an

incumbent thereof and his qualifications therefor as well as for the filling of vacancies in the same. Accordingly, when a careful examination of the Act of 1907 demonstrates that nowhere in the act is any provision made for the election or appointment of a judge of said court, or for the term of his office, or his qualifications therefor, we are inevitably forced to the conclusion that the so-called "division number two" of said court never in law or in fact became a court. I also agree with Judge VALLIANT that if the judge of division number seven of the circuit court should be called in by Judge Wallace, he would be only the judge of the circuit court to which he had been lawfully appointed and not judge of division number two of the criminal court, and calling him "judge of division number two" would not make him any more or less than judge of the circuit court temporarily called in to assist Judge Wallace in the disposition of his docket, and it is only when so called in that he could be with any propriety designated as judge of division number two, and while so acting could under the act have a criminal cause sent to him under the provision of section 8 of the act. That section when read in connection with the whole act simply means that while acting under the requirement of the judge of the criminal court as assistant judge of said court, a cause might be certified to him which Judge Wallace was incompetent under the law to try. But until he was so called in, as already said, there is and would be under the law, no such thing as a separate "division number two" to whom a cause could be sent on change of venue. There is no such thing under the act as a permanent division number two of said criminal court, but a mere temporary expedient for the disposition of the docket when and only when the judge of the criminal court is of the opinion that he needs such assistance. In the absence of a call and notification

of the judge of division number seven of the circuit court, there is absolutely no obstacle to the judge of the criminal court calling in the judge of some other circuit other than the judge of division number seven of the circuit court of Jackson county to try the case when an application for change of venue has been made against the regular judge of the criminal court. In the application for a writ in this case, there is no pretence that at the time the petitioner herein prayed for this writ of prohibition Judge Wallace had called in Judge Porterfield to assist him in the disposition of his docket, and that Judge Porterfield was actually engaged in assisting in the trial of the criminal docket of said court.

If the Act of 1907 has been properly construed by Judge VALLIANT, as I think it has, it does not repeal by implication section 2597 as adopted February 21, 1905 (Laws 1905, p. 132), as both acts can stand. Indeed we think it is obvious that the purpose of the two acts was essentially different. The Act of 1905, which is a continuation of section 2597, Revised Statutes 1899, with certain amendments, was passed with a view to a change of venue in an individual case as it might arise and is general, having application to all circuit and criminal courts, whereas the Act of 1907 was only intended to provide temporarily for assistance to the criminal court of Jackson county when its docket should become congested, and the judge called in to render such assistance was to aid in the disposition of the docket without any reference to the regular judge of that court being disqualified for any reason, and the right of change of venue from the regular judge to such assistant judge was only given when such assistant judge had been called in and was in the discharge of his duties as additional judge or his services had not yet been dispensed with by the regular judge as contemplated in section two of the act. The law on

this subject of implied repeal of one statute by another is firmly established in this State. It was announced in Manker v. Faulhaber, 94 Mo. 1. c. 440, to be, "in order that the latter shall operate a repeal of the former, the two acts must be irreconcilably inconsistent, or it must clearly appear that the Legislature intended by the latter act to prescribe the only rule that should govern in the case provided for. [St. Louis v. Alexander, 23 Mo. 483; Deters v. Renick, 37 Mo. 598; State ex rel. v. McDonald, 38 Mo. 529; State ex rel. v. Macon Co. Ct., 41 Mo. 453; State ex rel. v. Severance, 55 Mo. 378; Sedgwick on Stat. and Const. Law (2 Ed.), 97, 107.]" See, also, State ex rel. v. Slover, 113 Mo. 202; State ex rel. v. Walbridge, 119 Mo. 383. So that as Judge Wallace had not exercised the privilege which he alone possessed of calling in the judge of division number seven of the circuit court to assist him in the disposition of his docket, there was no such court or division of court as division number two to which to send the case on change of venue, or judge thereof to be called in to try the same, and hence even if the act is otherwise valid Judge Wallace was not exceeding his jurisdiction in calling in Judge Fort to try the petitioner.

II. But in my opinion, the Act of March 19, 1907, entitled, "An Act to create an additional division of the criminal court of Jackson county, Missouri," etc., was not a constitutional enactment. I reach this conclusion not on the ground that it is a special act within the meaning of section 53 of article 4 of the Constitution, because I regard it as well settled in this State that acts of the Legislature providing for additional courts, either circuit or criminal, are matters which affect the whole State, and it has been so ruled on numerous occasions. [State ex rel. v. Hughes, 104 Mo. 459; State v. Orrick, 106 Mo. 111; State ex rel. v.

Field, 119 Mo. 611; State v. Etchman, 189 Mo. 648;
Coffey v. Carthage, 200 Mo. 616.] In my opinion the
act is in plain violation of section 1 of article 4 of the
Constitution, which provides: "The legislative power,
subject to the limitations herein contained, shall be
vested in a Senate and House of Representatives to be
styled 'The General Assembly of the State of Mis-
souri.' " As said by this court in State ex rel. Maggard
v. Pond, 93 Mo. l. c. 632, "The proposition that under
our form of government the power and duty of mak-
ing laws is cast upon the Legislature and that such
power cannot be delegated, except, perhaps, to munic-
ipal corporations for their local government, is too
clear to admit of dispute." That a law may be condi-
tional as to its taking effect, or its operation, upon the
happening of a future event has been announced by a
large number of the ablest courts of this country. The
most familiar example of this character of legislation
is found in the so-called local option laws in the various
States, in which laws, perfect in themselves when they
left the Legislature, are to control and be effective
when a majority of the qualified voters of a given city
or county give their assent thereto. Some of the earlier
authorities held that the enactment of laws of this
character was a delegation of legislative functions and
therefore beyond the power of the Legislature, but a
large preponderance of the more recent decisions of
the courts of last resort in this country hold that it is
within the power of the Legislature to enact such laws,
provided, always, that they contain an entire and per-
fect declaration of the legislative will and require noth-
ing to perfect them and make them operative as laws
except the determination by the people of the district
to be affected by such laws at an election provided for
in the statute. And such has been the ruling in this
State beginning with State ex rel. Maggard v. Pond,
93 Mo. 606, down to and including State v. Handler,

178 Mo. 38. The act in this case, however, is one which on its face, if valid at all, takes effect immediately by virtue of the emergency clause. It does not fall within that class of laws which are to take effect upon a contingency; on the contrary, the inherent vice in the act is that on its face it delegates legislative power. By section 31 of article 6 of the Constitution of this State, the power to create a criminal court in counties having a population of fifty thousand, is vested exclusively in the General Assembly, in addition to the plenary grant of legislative power in section 1 of article 4 of the Constitution. In State ex rel. v. County Court, 50 Mo. l. c. 321, it was said: "A tribunal for the transaction of judicial business can only be granted by the supreme power of the State." In view of these organic principles, it may be safely asserted that the exercise of judgment and discretion and the determination of the necessity for, and the expediency of providing for an additional judge of the criminal court of Jackson county, was a legislative function, which could not be delegated to any other person or persons.

What is a legislative function has often been considered by this court. Thus in Ruggles v. Collier, 43 Mo. 353, the charter of the city of St. Louis provided that: "In those cases where the city council shall deem it necessary, and also in cases where the owners of the major part of the lots or lands fronting on any paved street, etc., may petition for paving the same, the city council shall cause such repaving to be done in the manner prescribed by ordinance." The city passed an ordinance which provided that in a certain portion of the city "the mayor is hereby authorized to cause the carriage ways of the streets thereof to be paved with wooden pavement *wherever and whenever he should deem it necessary.*" This court said: "It was the intention of the Legislature in conferring this power, that the council should act in determining

this subject in its legislative capacity," and that there was no authority in the charter to justify the council in referring to another person or body the right to determine when the work of repaving should be done, the court saying: "Legislative power implies judgment and discretion upon the part of those who exercise it, and a special confidence and trust upon the part of those who confer it. . . . That exercise of judgment, discretion, and care, which the persons most deeply interested had the right to expect on the part of those to whom they committed their important trust, perhaps on account of their peculiar fitness, is absolved and shifted, and placed in the mere discretion of a city officer. There is nothing imperative on the mayor; he may act, or not, at his mere pleasure and caprice. It is easy to perceive that such a power might be susceptible of the greatest abuse, and the law has wisely withheld it." The principle announced in that case has been reiterated many times in this State. [City to use v. Eddy, 123 Mo. 546; Matthews v. City, 68 Mo. 115; Neill v. Gates, 152 Mo. 585; Whitworth v. Webb City, 204 Mo. l. c. 598; Sedalia to use v. Donohue, 190 Mo. 407.] Judge COOLEY, in his work on Constitutional Limitations (6 Ed.), page 137, says: "One of the settled maxims in constitutional law is that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution is changed. The power to whose judgment, wisdom and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom and patriotism of any other body for those to which alone the people have seen fit to

confide this sovereign trust.'' These principles have, however, become axiomatic with us and need only to be mentioned to be accepted.

When the Legislature came to consider the propriety and necessity for another judge to assist in disposing of the business of the criminal court, as already said, they stopped short of providing another regular judge for said court and apparently considered that the congestion of .the business of that court could be subserved by delegating the whole matter to the judgment and discretion of the criminal judge; they left it to that judge to determine in his own mind when the business of said court would require the assistance of another judge, instead of determining, with the light before them, that such additional judge was needed. That the determination of the necessity of another judge was a legislative function, it seems to me too plain to admit of a doubt, but this high duty was delegated to the judge of the criminal court, who should determine for himself when the business of said court required such assistance. Can a clearer case of delegating to another so important a duty be conceived? Certainly the subject-matter of this legislation was of the gravest character. It was a provision for a judge, who should have jurisdiction to pass upon the life and liberty of the citizen, and yet the expediency and duty of calling in an additional judge was shifted from the Legislature upon the judge of the criminal court to determine for himself whether he would call in such judge. There is nothing in the act which made it imperative that he should do so at any particular time, or at all, and yet in the 15th section of the act it is recited that: ''The increase of the criminal business of said criminal court in said county being so great that the said criminal court as now constituted is unable to dispose of the same, because said business is in arrears and is continually and rapidly accumulating

and aggravating the delay in the administration of justice,'' etc. And yet the Legislature left it entirely to the discretion of the judge of the criminal court and did not exercise its constitutional power either to provide another regular judge for said court or to fix a definite time and make it the imperative duty of the criminal court to call in the designated judge or to require the judge of division number seven to assume said duties without the request or notification of the judge of the criminal court, nor did it assign a specified portion of the docket to him for disposition and make suitable enactments for the distribution of the cases. But this is not all, not only was the judge of the criminal court left entirely untrammeled as to whether he would call in the judge of division number seven, but he was given the additional power to determine when such assistance was no longer needed, whereupon the judge of division number seven should adjourn his sittings. If certainty in the law is one of its most desirable elements, surely it has been violated in this case, and it cannot be said that it was a rule of conduct prescribed by the lawmaking power. I cannot agree to the construction placed upon section 8 of the act in view of the provisions of section 2. In my opinion, the latter section goes to the very life and essence of the whole act, and I can but regard the act, taken in its entirety, as a delegation of a legislative power of the General Assembly to the judge of the criminal court, and in the light of constitutional principles it was in contravention of the plenary legislative power conferred upon the General Assembly by the first section of article 4 of the Constitution. Accordingly, in my opinion, it should be held inoperative and incapable of enforcement, and so holding I think the writ of prohibition should be denied in this case. *Burgess, J.,* concurs.